property and keep a record of necessary expenditures.

C. Prepare an inventory of damaged or stolen personal property showing, in detail, the quantity, age, description, actual cash value and amount of loss claimed for each item. Attach to the inventory all bills and other documents that substantiate the figures in the inventory.

D. At any reasonable time and place we designate, and as often as we reasonably require:
   1. show us the damaged property;
   2. submit to questions concerning the loss under oath while not in the presence of any other person defined as "you", and sign and swear to the answers;
   3. allow us to examine and copy or abstract any records and documents we request.

E. Within 60 days after loss, you must file with us a signed and sworn proof of loss, stating to the best of your knowledge:
   1. the time and cause of loss; and
   2. your interest and that of any other person in the property involved and all encumbrances on the property; and
   3. a description of each item, including all information contained in the inventory described in C. above; and
   4. a description of other insurance policies that might apply to the loss; and
   5. any changes in ownership, use, possession or location of the property that took place since this policy was issued; and
   6. if loss is to a building, who occupied it at the time of loss, what the purposes of such occupancy were, and whether the building stood on leased ground; and
   7. specifications of any damaged building, fixture or machinery and detailed estimates for repair of the damage; and
   8. receipts for additional living expenses you incur and records supporting the fair rental value; and
   9. evidence or affidavit supporting a claim under Section I - Additional Coverages 7. Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money, stating the amount and cause of loss.

3. **How We Settle A Loss.** Covered property losses are settled as follows:

A. Subject to the applicable deductible, we will pay the actual cash value at the time of the loss for the following:
   1. aerials, antennas, and awnings;
   2. cesspools, septic tanks and septic fields;
   3. carpeting;
   4. household appliances;
   5. outdoor equipment and swimming pools;
   6. structures, other than building structures;
   7. personal property covered under Coverage C.

   We will not pay an amount exceeding that necessary to repair or replace the property or an amount in excess of the limit of liability applying to the property.

B. Coverage A - Dwelling and Coverage B - Private Structures. Subject to the applicable deductible, we will pay the full cost of repair or replacement without deduction for depreciation for dwelling and private structures subject to the following:
   1. We will pay no more than the $10,000 limit of liability on Land as provided in Section I - Additional Coverages.
   2. If at the time of loss the amount of insurance applicable is 80% or more of the full replacement cost:
      a. we will not be liable unless and until actual repair or replacement is complete.
      b. our liability will not exceed the smallest of:
         (1) the limit of liability applicable to the structure;
         (2) the cost to repair or replace the damaged structure which will be used on the same premises;
         (3) the amount actually and necessarily spent to repair or replace the damaged structure intended for the same occupancy and use.
   3. If at the time of loss the amount of insurance applicable is less than 80% of the full replacement cost, our

liability will not exceed the larger of:
a.  the actual cash value; or
b.  that proportion of the cost to repair or replace without deduction for depreciation, which the whole amount of insurance applicable bears to 80% of the replacement cost. Under this paragraph, we will not be liable unless and until actual repair or replacement is complete.

4.  In determining the amount of insurance required to equal 80% of the full replacement cost, the value of the following will be disregarded:
a.  underground foundations;
b.  underground pipes;
c.  underground wiring;
d.  underground drains.

5.  We will pay full replacement cost whenever the full cost of repair or replacement is:
a.  less than $2,500; and
b.  less than 5% of the amount of applicable insurance.

**You** may disregard the provisions relating to settlement on a replacement cost basis and make claim for loss on an actual cash value basis. Such election will not stop **you** from making a further claim within 180 days after the loss, provided **you** still have an insurable interest in the property, for any additional liability based on the replacement cost value at the time of the loss.

Actual cash value means there may be a deduction for depreciation.

4.  **Our Settlement Options.** We will adjust all losses with **you.** We will pay **you** unless another payee is named in the policy. We will pay within 60 days after the amount of loss is agreed upon. This amount may be determined by an agreement between **you** and **us,** an appraisal award or entry of a final judgment, subject to Section I, Condition 3. How We Settle A Loss.

We have the option of taking all or part of the property at the agreed or appraised value. We have the option to repair, rebuild or replace the damaged or destroyed property with property of like kind and quality within a reasonable time. We must give **you** notice of our intention within 30 days after **we** receive **your** signed, sworn proof of loss.

5.  **Abandoned Property.** We are not obligated to accept any property or responsibility for any property abandoned by **you.**

6.  **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either **you** or **we** can make a written demand for an appraisal. Each party will select a competent and impartial appraiser and notify the other within 20 days of the appraiser's identity. The two appraisers will select a competent and impartial umpire. If the two appraisers are unable to select an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers will appraise the loss and determine separately the full replacement cost, actual cash value and the loss as to each item. Any disagreement between the appraisers will be resolved by the umpire. The written award by two of these three people as to any item will be binding on **you** and **us** when filed with **us. You** will pay the appraiser selected by **you. We** will pay the appraiser whom **we** selected. You and we will split the other expenses of appraisal and the fee of the umpire.

7.  **Loss.** Any loss we pay under this policy does not reduce the limit of liability.

8.  **Rights And Duties Of Mortgagee.** If a mortgagee is named in the Declarations, any payment for loss under Coverage A or B will be made to the mortgagee to the extent of its interest under all present and future mortgages. If more than one mortgagee is named, payment will be made in the order of priority of the mortgagees.

The interest of the mortgagee under this policy will not be affected by any action or neglect by **you.**

The interest of the mortgagee under this policy will terminate unless it:
A.  Pays upon demand any premium due if the owner or mortgagor fails to do so.

B.  Notifies us of any change of ownership or increase in hazard of which the mortgagee has knowledge.

C.  Pays upon demand the premium for any such increase in hazard.

We will notify the mortgagee if you fail to give us proof of loss. Within 60 days after receiving such notice, the mortgagee must give us proof of loss. Policy conditions relating to appraisal, time of payment and time of bringing lawsuit apply to the mortgagee.

We will give the mortgagee not less than 10 days notice of cancellation or nonrenewal of the insurance protecting its interest.

If we pay the mortgagee for any loss and deny payment to you, we will be subrogated to the extent of our payment to all the rights that the mortgagee has under the mortgage on the property. At our option, we may pay to the mortgagee the whole principal on the mortgage and any interest due. In this event, we may receive a full assignment and transfer of the mortgage and all securities held as collateral for the mortgage debt. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

Our cancellation of the policy also applies to agreements under this condition.

As used in this condition, the term "mortgagee" includes a trustee, if applicable.

9.  **Loss To A Pair Or Set.** In case of loss to a pair or set we may elect to:

A.  Repair or replace any part to restore the pair or set to its value before the loss; or

B.  Pay the difference between actual cash value of the property before and after the loss.

10.  **No Benefit To Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

11.  **Suit Against Us.** No suit or action may be brought against us by you unless there has been full compliance with all of the policy terms. Any suit or action must be brought within twelve months of the loss.

12.  **Other Insurance.** If there is other similar insurance, we will pay our fair share. Our share is the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, this insurance is excess over any other insurance that covers loss by theft or loss of personal property on an unspecified peril basis.

## SECTION I - OPTIONAL COVERAGES

The following coverages are afforded only if indicated in the Declarations. They are subject to all of the provisions applicable to Section I, except as modified herein.

## COVERAGE 1 - EARTHQUAKE AND VOLCANIC ERUPTION

We will pay for direct loss to the property described in Coverages A, B and C caused by Earthquake or Volcanic Eruption.

We do not cover loss resulting directly or indirectly by flood or tidal wave, whether caused by, resulting from, contributed to or aggravated by earthquake or volcanic eruption.

1.  One or more earthquake shocks that occur within a seventy-two hour period shall constitute a single earthquake. One or more volcanic eruptions that occur within a seventy-two hour period shall constitute a single volcanic eruption.

2.  We will pay only that part of the loss caused by earthquake over 5% of the total amount of insurance that applies. This deductible shall apply separately to loss under Coverage A - Dwelling, Coverage B - Private Structures and Coverage C - Personal Property. This deductible amount shall not be less than $250 in any one loss.

The policy deductible applies to each loss caused by volcanic eruption.

This coverage does not increase the limits of liability stated in this policy.

## COVERAGE 2 - REPLACEMENT PLUS

For the dwelling under Coverage A, subject to the deductible shown in the Declarations, **we** will pay the full cost of repair or replacement without deduction for depreciation even if that cost exceeds the amount shown in the Declarations.

The following requirements apply:
1. The actual repair or replacement must be completed.
2. **You** must have insured **your** dwelling to 100% of its replacement cost, the replacement cost being determined by:
   A. **Our** home replacement cost estimator completed and based on the accuracy of information **you** furnished; or
   B. An inspection of the **residence premises.**
3. **You** must have accepted the Inflation Protection Provision in the policy and agree to accept each annual adjustment in the dwelling protection coverage limits of liability automatically applied to **your** policy at each renewal.
4. **You** must have notified **us** within 90 days of the start of any additions or other physical changes which increase the value of **your residence premises** by $5000 or more.

If any of these requirements are not satisfied, the loss will be settled according to the Section I - Conditions 3. How We Settle A Loss and 4. Our Settlement Options.

This coverage does not apply to land, including land on which the dwelling or private structures are located.

## COVERAGE 3 - REPLACEMENT COST ON CONTENTS

Under Coverage C - Personal Property, **we** will pay the full cost of repair or replacement, less the applicable deductible, without deduction for depreciation:

1. This coverage does not apply to:
   A. antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced with new articles.
   B. articles whose age or history contribute substantially to their value. This includes but is not limited to memorabilia, souvenirs and collector's items.
   C. property which is obsolete or unusable for the purpose for which it was originally intended becuase of its age or condition prior to the loss.
2. **Our** liability for any loss shall not exceed the smallest of the following amounts for any one **occurrence:**
   A. the cost to replace the property with a similar property of like kind and quality;
   B. the full cost of repair to restore the property to its original condition;
   C. the limit of liability for Coverage C shown in the Declarations subject to the Special Limitations On Certain Property under Section I - Coverages, Coverage C - Personal Property.
3. **We** will not be liable for any loss before the acutal repair, restoration or replacement is completed.
4. If **you** decide not to repair, restore or replace the damaged or stolen property, settlement will be on an actual cash value basis. **You** may make any claim within 180 days after the date of loss for any additional payment on a replacement cost basis if **you** repair, restore or replace the damaged or stolen property.

## COVERAGE 4 - EXTENDED COVERAGE ON JEWELRY, WATCHES AND FURS

The insurance provided by this policy under Coverage C - Personal Property on jewelry, watches, furs, precious and semi-precious stones is extended to apply against all risks of physical loss or damage. The per item and aggregate limits of liability are set forth in the Declarations page.
1. This coverage is subject to the Section I - Conditions and the General Conditions.
2. This coverage does not insure against loss caused by wear and tear, gradual deterioration, insects, vermin, inherent vice, neglect and war.
3. Any deductible clause applicable to Coverage C also applies to this coverage.
4. For loss caused by theft, the insurance afforded under this coverage will apply in lieu of and not in addition to that afforded under Coverage C.
5. For loss caused by other than theft, insurance afforded under this coverage will apply in addition to that afforded under Coverage C.

## COVERAGE 5 – HOME COMPUTER COVERAGE

This coverage applies in lieu of, and not in addition to, the coverage afforded for **computers, peripheral devices, media** and **purchased software** under Section I, Coverage C - Personal Property.

**We** will pay for sudden and accidental physical loss to **your** owned **computer, your** owned **peripheral device, your** owned **media** and **your purchased software** except as excluded below. **We** will pay only that part of the loss that exceeds $50.

The use of the word "owned" above includes a **computer, peripheral device** and **media** actually owned by **your** employer but leased or loaned to **you** for **your** use at home. This coverage is excess over any valid and collectible insurance written in the name of the actual owner of the property.

**We** do not cover:
1. Wear and tear, gradual deterioration, depreciation, insects, vermin, corrosion, rust, mold, dampness, dryness, cold or heat;
2. Mechanical breakdown, faulty construction, an original defect in the property, error, omission or deficiency in design, specifications, workmanship or materials;
3. Neglect, meaning **your** neglect to use all reasonable means to save and preserve the property at and after the time of a loss, or when property is endangered by Section I - Losses We Cover;
4. Intentional loss, meaning any loss arising out of any act committed:
   A. by **you** or at **your** direction; and
   B. with the intent to cause a loss.
   This exclusion does not apply to an insured person not participating in the intentional loss.
5. Dishonest acts by **you**, anyone else with an interest in the property or **your** or their employees or agents, whether or not occurring during the hours of employment. Nor do **we** insure against dishonest acts by anyone entrusted with the property;
6. Indirect or consequential loss to the property;
7. Nuclear Action, War and Water Damage as set forth in Section I - Losses We Do Not Cover.

**Our** limit of liability for loss under this coverage will be the lesser of:
1. The cost of new property of similar make, type, quality, capacity, and size; or
2. The reasonable cost of repair with parts of like kind and quality; or
3. The limit of liability as shown for this coverage on the Declarations of this policy.

**We** reserve the right to repair or replace the damaged property or to pay for this loss in money.

## COVERAGE 6 – INCREASED LOSS ASSESSMENT COVERAGE

**We** will pay **your** share of the following assessments charged against all building owners by the association up to the limit of liability shown on the Declarations:
1. loss or damage to the property held in common by all building owners, if caused by a peril listed under Section I - Losses We Cover;
2. **bodily injury** or **property damage** covered under Section II of the policy.
3. damages for which the association may be obligated to pay because of **personal injury.**

"**Personal Injury**" is defined as injury arising out of one or more of the following:
1. false arrest, false imprisonment, wrongful detention or malicious prosecution;
2. wrongful eviction or wrongful entry;
3. libel, slander, defamation of character or invasion of privacy.

The Section II - Losses We Do Not Cover do not apply to **personal injury**. Loss Assessment Coverage for **personal injury** does not apply to:
1. Liability assumed by **you** under any contract or agreement.
2. Injury caused by a violation of a penal law or ordinance committed by **you** or with **your** knowledge or consent.
3. Injury sustained by any person as a result of an offense related in any manner to the employment of this person by **you.**
4. Injury arising out of **your** past or present **business** activities.

5. Civic or public activities performed for pay by **you**.

We will pay only when the assessment exceeds $250 and then only for the amount of such excess. This coverage is not subject to any deductible contained in Section I of this policy. This coverage shall be excess over any other insurance covering the association of building owners.

This coverage is subject to all of the Exclusions and Conditions of Section I and Section II, except where noted.

Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

## COVERAGE 7 - INCREASED COVERAGE ON MONEY
The $200 limitation on money, bullion, bank notes, coins, medals and other numismatic property under Special Limitations On Certain Property in Section I - Coverages is increased to the amount shown on the Declarations for this option.

## COVERAGE 8 - INCREASED COVERAGE ON SILVERWARE AND GOLDWARE
The theft limitation on silverware and goldware under Special Limitations On Certain Property in Section I - Coverages is increased to the amount shown in the Declarations for this option.

## COVERAGE 9 - INCREASED COVERAGE ON CREDIT CARD, BANK FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY
The $1000 limit of liability for this coverage as shown in Section I - Additional Coverages 7. is increased to the amount shown in the Declarations for this option.

## COVERAGE 10 - PRIVATE STRUCTURES RENTED TO OTHERS
Under Coverage B - Private Structures, coverage is provided for the private structures rented to others as shown in the Declarations. Our limit of liability for the private structures rented to others is the amount shown in the Declarations for this option. Under Coverage F - Personal Liability and Coverage G - Medical Payments To Others, coverage is provided for the private structure rented to others shown in the Declarations for this option.

## COVERAGE 11 - MERCHANDISE FOR SALE
Under Coverage C - Personal Property, **we** will pay for loss to **business** property consisting of merchandise held as samples, held for sale or held for delivery after sale. Coverage applies only when the merchandise is located on the **residence premises**. Our limit of liability is the amount shown in the Declarations for this option.

## COVERAGE 12 - INCREASED COVERAGE ON TREES, PLANTS AND SHRUBS
The 5% of the Coverage A limitation for loss to trees, shrubs and plants and the $500 limitation for any one tree, shrub or plant in Section I - Additional Coverages are increased to 10% of the Coverage A limit of liability for loss to trees, shrubs and plants and no more than $1000 for any one tree, shrub or plant. The limitation on lawns is not changed.

## SECTION II - LOSSES WE COVER

## COVERAGE F - PERSONAL LIABILITY
We will pay all sums for **bodily injury** and **property damage** to others for which the law holds **you** responsible because of an **occurrence**. This includes prejudgment interest awarded against **you**.

We will defend **you**, at **our** expense with counsel of **our** choice, against any suit or claim seeking these damages. **We** may investigate, negotiate, or settle any suit or claim.

We are not obligated to pay any claim or judgment or defend any suit if **we** have already exhausted the limit of liability set forth in the Declarations by paying judgments or settlements.

## COVERAGE G - MEDICAL PAYMENTS TO OTHERS
We will pay the reasonable **medical expenses** that are incurred or medically ascertained within three years from the date of the accident causing **bodily injury**. This coverage does not apply to **you**. This coverage does apply to others

who sustain **bodily injury** as a result of an accident, while they are:
1. on the **insured premises** with **your** permission.
2. off the **insured premises**, if the **bodily injury**:
   A. arises out of a condition on the **insured premises** or immediately adjoining ways.
   B. is caused by **your** activities.
   C. is caused by a **residence employee** in the course of employment by **you**.
   D. is caused by an animal owned by **you** or in **your** care.
   E. is sustained by any **residence employee** arising out of and in the course of employment by **you**.

## SECTION II – LOSSES WE DO NOT COVER

## UNDER COVERAGE F – PERSONAL LIABILITY AND COVERAGE G – MEDICAL PAYMENTS TO OTHERS, WE DO NOT COVER:

1. **bodily injury** or **property damage** which is reasonably expected or intended by **you** or which is the result of **your** intentional and criminal acts. This exclusion is applicable even if **you** lack the mental capacity, for whatever reason, to govern **your** conduct.

2. **bodily injury** or **property damage** arising out of or in connection with **your business** activities. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business**.

   With respect to Coverage F – Personal Liability, this exclusion does not apply to **your** occasional or part-time **business** activities if **you** are under 19 years of age or a full-time student under 21 years of age.

3. **your** legal liability to any person resulting from **your** regular care of one or more persons anywhere for economic gain and regardless of whether such care or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.

4. **bodily injury** or **property damage** arising out of the rendering of or failing to render professional services of any kind.

5. **bodily injury** or **property damage** arising out of the use of any premises owned, rented or controlled by **you**. Coverage does apply to:
   A. the **insured premises**; and
   B. **bodily injury** to a **residence employee**.

6. **bodily injury** or **property damage** arising out of:
   A. the ownership, maintenance, occupancy, use, loading or unloading of a **motor vehicle** owned or operated by or rented or loaned to **you**; or
   B. the entrustment by **you** of a **motor vehicle** described in A. above to any person; or
   C. statutorily imposed vicarious parental liability for the actions of a child or minor using a conveyance described in paragraphs A. or B. above.

   Coverage is provided for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you**.

7. **bodily injury** or **property damage** arising out of:
   A. the ownership, maintenance, occupancy, use, or loading or unloading of watercraft not on the **insured premises**:
      1. owned by or rented to **you** if it has inboard or inboard-outdrive motor power of more than 50 horsepower; or
      2. owned by or rented to **you** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in length; or
      3. owned by **you** if it is powered by one or more outboard motors with more than 25 total horsepower; or

    4.  designated as an airboat, air cushion, jet ski or similar type of craft.

    This exclusion does not apply while the watercraft is stored; or

B.  the entrustment by **you** of a watercraft described in A. above to any person; or

C.  statutorily imposed vicarious parental liability for the actions of a child or minor using a watercraft described in paragraphs A. or B. above.

Coverage is provided for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you**.

8.  **bodily injury** or **property damage** arising out of:

    A.  the ownership, maintenance, occupancy, use, or loading or unloading of an aircraft; or

    B.  the entrustment by **you** of an aircraft to any person;

    C.  statutorily imposed vicarious parental liability for the actions of a child or minor using an aircraft.

Coverage is provided for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you**, except while engaged in the operation or maintenance of aircraft.

9.  **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed to be a warlike act even if accidental.

10.  **bodily injury** to any insured within the meaning of Part 1 of the definition of **"you"**.

11.  **bodily injury** or **property damage** resulting from the release of toxic chemicals and other pollutants or contaminants.

12.  statutorily imposed liability resulting from the release of toxic chemicals and other pollutants or contaminants.

## UNDER COVERAGE F - PERSONAL LIABILITY, WE DO NOT COVER:

1.  liability:

    A.  for **your** share of any loss assessment charged against all members of an association, corporation or community of property owners (see Section II - Additional Coverage, 4. Loss Assessment);

    B.  assumed by **you** under any unwritten contract or agreement, or by any contract or agreement in connection with **your business.**

2.  **property damage** to property owned by **you**.

3.  **property damage** to property occupied or used by **you**, rented to **you**, in **your** care or over which **you** have physical control. Coverage is provided for **property damage** caused by fire, explosion or smoke.

4.  **bodily injury** or **property damage** for which **you** are insured under any nuclear energy liability policy or would be insured but for the exhaustion of its limit of liability.

5.  **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by **you** under any workers compensation, non-occupational disability or occupational disease law.

## UNDER COVERAGE G - MEDICAL PAYMENTS TO OTHERS, WE DO NOT COVER BODILY INJURY:

1.  to a **resident employee** if the **bodily injury** occurs off the **insured premises** and does not arise out of or in the course of the **residence employee's** employment by **you**.

2.  from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

3.  to any regular resident of the **insured premises**, except **your residence employee**.

4.  to any person eligible to receive benefits required to be provided or voluntarily provided under any workers compensation, non-occupational disability or occupational disease law.

# SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Damage to Property of Others.**
   **We will pay** up to $500 each time **you** cause **property damage** to someone else's property during the term of the policy. At our option, **we** will pay the cost to either repair or replace the damaged property.

   **We will not pay for property damage:**
   A. to property covered in Section I of this policy.
   B. caused intentionally by **you** if **you** are 13 years of age or older.
   C. to property owned by or rented to **you**, any of **your** tenants or any resident of **your** household.
   D. arising out of:
      1. any act or omission in connection with a premises **you** own, rent or control, other than the **insured premises.**
      2. **business** activities.
      3. the ownership, maintenance, occupancy, operation, use, or loading or unloading of any **motor vehicle**, aircraft or watercraft, including airboat, air cushion, jet ski, sail board or similar type watercraft.

2. **Claim Expenses. We will pay**
   A. all costs **we** incur and costs taxed against **you** in any suit **we** defend.
   B. premiums on bonds required in any suit **we** defend, but not for bond amounts greater than the limit of liability for Coverage F - Personal Liability. **We** are not obligated to apply for or furnish any bonds.
   C. reasonable expenses **you** incur at **our** request.
   D. up to $100 per day for lost wages or salary, but not other income, because **you** attended a hearing or trial at **our** request.
   E. interest on the entire judgment awarded in any suit **we** defend which accrues after judgment is entered and before **we** pay, tender or deposit in court the amount for which **we** are liable under this policy.

3. **First Aid Expenses. We** will pay expenses for first aid to others **you** incur at the time of the accident for **bodily injury** to which this insurance applies. **We** will not pay for first aid to **you.**

4. **Loss Assessment. We** will pay up to $1000 for **your** share of any loss assessment charged during the policy period against **you** by a corporation or association of property owners, when the assessment is made as a result of:
   A. each **occurrence** to which Section II of this policy would apply;
   B. liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:
      1. the director, officer or trustee is elected by the members of a corporation or association of property owners; and
      2. the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

   This coverage applies only to loss assessments charged against **you** as owner or tenant of the **insured premises. We** do not cover loss assessments charged against **you** or a corporation or association of property owners by any governmental body.

   Section II - Losses We Do Not Cover, Under Coverage F - Personal Liability, Exclusion 1.A. does not apply to this coverage.

# SECTION II - CONDITIONS

1. **Limit Of Liability.** Under Coverage F - Personal Liability, the limit of liability shown in the Declarations for "each **occurrence**" is the maximum **we** will pay for all damages as the result of any one **occurrence.**

   Under Coverage G - Medical Payments to Others, the limit of liability shown in the Declarations for "each person" is the maximum **we** will pay to any one person as a result of any one accident.

2. **Severability.** Subject to the limit of liability, this insurance applies separately to each covered person or organization against whom claim is made or suit is brought.

3. **Your Duties In The Event Of An Accidental Loss.** In the event of an accident or **occurrence, you** must do the following things:
   A. Promptly notify **us** or **our** representative, in writing, stating:
      1. **your** name and policy number.
      2. the date, place and circumstances of the accident.
      3. the name and address of anyone who might have a claim against **you.**
      4. **the names and addresses of any witnesses.**
   B. Immediately send **us** any legal papers relating to the accident.
   C. At **our** request, **you** must:
      1. cooperate with **us** and assist **us** in any matter concerning a claim or suit.
      2. help **us** enforce any right of recovery against any person or organization who may be liable to **you.**
      3. attend any hearing or trial.
      4. help **us** in collecting and giving evidence and obtaining the attendance of witnesses.
   D. Under Damage to Property of Others in Section II - Additional Coverages, give **us** a sworn statement of the loss within 60 days after the loss. Also, be prepared to show **us** any damaged property under **your** control.
   E. **You** must not voluntarily pay any money, assume any obligations, or incur any expenses, other than for first aid to others at the time of the loss as provided for in this policy.

4. **What An Injured Person Must Do Under Coverage G - Medical Payments To Others.** The injured person, or someone acting for that person, must do the following:
   A. Promptly give **us** written proof of the claim. If we request, this must be done under oath.
   B. Give **us** written authorization to obtain copies of all medical records and reports.
   C. Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

5. **Our Payment Of Loss Under Coverage G - Medical Payments To Others. We** may pay the injured person or the provider of the medical services. Such payment is not an admission of liability by **you** or **us.**

6. **Lawsuits Against Us.** No suit or action may be brought against **us** by **you** unless there has been full compliance with all of the policy terms.

   No one may sue **us** until the amount of legal liability has been finally determined either by judgment after trial or by written agreement of **you,** the injured person and **us.**

   No one shall have any right to make **us** a party to a suit to determine **your** liability.

7. **Other Insurance Under Coverage F - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION II - OPTIONAL COVERAGES

The following coverages are afforded only if indicated in the Declarations. They are subject to all of the provisions applicable to Section II, except as modified herein.

## COVERAGE 20 - BUSINESS PURSUITS

The insurance provided in Section II is extended to afford coverage for **bodily injury** and **property damage** arising out of the specified **business** activities of the person(s) designated in the Declarations.

**We** do not cover:
1. **bodily injury** or **property damage** arising out of **business** activities when the **business** is owned or financially controlled by **you** or by a partnership or joint venture of which **you** are a partner or member.
2. **bodily injury** or **property damage** arising out of the rendering or failure to render a professional service, other than teaching or school administration.
3. **bodily injury** to **your** fellow employee arising in the course of employment.

4.   when **you** are a member of the faculty or teaching staff of any school or college:
  A.   **bodily injury or property damage** arising out of the ownership, maintenance, use, occupancy, entrustment, or loading or unloading of the following when owned, hired or operated by or for **you** or **your** employer or used by **you** for the purpose of instruction:
    1.   draft or saddle animals, including vehicles used with them;
    2.   aircraft;
    3.   **motor vehicles;**
    4.   **recreational motor vehicles;** or
    5.   watercraft, airboat, air cushion, jet ski or similar type of craft.
  B.   **bodily injury** to any pupil arising out of corporal punishment administered by **you** or at **your** direction.
5.   **your** legal liability to any person resulting from **your** regular care of one or more persons anywhere for economic gain and regardless of whether such care or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.

## COVERAGE 21 - WATERCRAFT LIABILITY

The insurance provided in Coverage F and G is extended to afford coverage for **bodily injury** and **property damage** arising out of the ownership, maintenance, entrustment, use, loading or unloading of watercraft described in the Declarations.

**We do not cover:**
1.   **bodily injury** to any of **your** employees arising in the course of employment. This exclusion applies only if the employee's principal duties are in connection with the maintenance or use of such watercraft; or
2.   such watercraft while it is used to carry persons for a charge or it is rented to others.

## COVERAGE 22 - INCIDENTAL OFFICE OCCUPANCY BY YOU

Coverage C - Personal Property is extended to include equipment, supplies and furnishings usual or incidental to the **business** described in the Declarations while located in the structure described in the Declarations. This coverage is in lieu of the $250 special limitation applying to property used or intended for use in a **business** under Coverage C - Personal Property.

This does not include any **computer** and the **peripheral device, media or purchased software** used with it. This also does not include merchandise held as samples or for sale or delivery after a sale.

The insurance provided under Coverage F - Personal Liability and Coverage G - Medical Payments To Others is extended to afford coverage for **bodily injury** and **property damage** arising out of **your business** activities which are usual or incidental to the use of the described structure.

**We do not cover:**
1.   **bodily injury** to any employee other than a **residence employee;** or
2.   **bodily injury** to any student arising out of corporal punishment administered by **you** or at **your** direction; or
3.   liability arising out of any acts, omissions or errors of **you** or any other person for whose acts **you** are liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specification, supervisory inspections or engineering services in the conduct of **your** incidental **business** involving data processing, **computer** consulting or **computer** programming; or
4.   **your** legal liability to any person resulting from **your** regular care of one or more persons anywhere for economic gain and regardless of whether such care or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.

## COVERAGE 23 - ADDITIONAL RESIDENCES RENTED TO OTHERS

The insurance provided in Section II is extended to afford **bodily injury** and **property damage** coverage to **you** on the additional one, two, three or four family dwelling rented to others and designated in the Declarations. The definition of **insured premises** is amended to include the designated rented dwelling.

## COVERAGE 24 - ADDITIONAL RESIDENCES OCCUPIED BY YOU

The insurance provided in Section II is extended to afford **bodily injury** and **property damage** coverage to **you** on **your** additional dwelling that is designated in the Declarations for this coverage. The definition of **insured premises** is amended to include the designated dwelling **you** occupy.

## COVERAGE 25 - PERSONAL INJURY

The insurance provided in Coverage F - Personal Liability is extended to include protection for **personal injury**.

**"Personal injury"** is defined as injury arising out of one or more of the following:

1.  false arrest, false imprisonment, wrongful detention or malicious prosecution;
2.  wrongful eviction or wrongful entry;
3.  libel, slander, defamation of character or invasion of privacy.

The Section II - Losses We Do Not Cover do not apply to **personal injury**.

Under **personal injury** we do not cover:

1.  liability assumed by **you** under any contract or agreement except any indemnity obligation assumed by **you** under a written agreement directly relating to the ownership, maintenance or use of the **insured premises**;
2.  injury caused by a violation of a penal law or ordinance committed by **you** or with **your** knowledge or consent;
3.  injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by **you**;
4.  injury arising out of **your business activities**;
5.  civic or public activities performed for pay by **you**;

## GENERAL CONDITIONS - SECTIONS I AND II

1.  **Policy Period.** This policy applies only to accidental loss in Section I or **bodily injury** or **property damage** in Section II, which occurs during the policy period.

2.  **Concealment Or Fraud.** This policy is void as to all persons defined as **you** in the General Definitions under Part 1 if any person so defined intentionally conceals or misrepresents any material fact or circumstance or makes false statements or engages in fraudulent conduct relating to this insurance, either before or after a loss. If this policy is void, all premiums paid will be returned since no coverage exists under the policy.

3.  **Conformity To Statute.** The terms of this policy which are in conflict with the statutes of the state in which the **insured premises** is located are hereby amended to conform to such statutes.

4.  **Death.** If any person named in the Declarations dies, we insure:
    A.  the spouse, if a resident of the household at the time of death.
    B.  the legal representative of the deceased, but only with respect to the premises and property of the deceased covered by this policy at the time of death.
    C.  any member of the deceased's household who was covered at the time of death, but only while a resident of the **insured premises**.
    D.  with respect to the property of the deceased, the person having proper temporary custody thereof, but only until appointment and qualification of a legal representative.

5.  **Liberalization.** We will automatically give **you** the benefit of any extension or broadening of this edition of the policy if the change does not require additional premiums.

    From time to time we may replace this policy in order to reflect any changes introduced since it was issued. However, any replacement policy will not change the limits or coverage with respect to any accident, **occurrence** or loss which occurred before it was replaced.

6.  **Waiver Or Change Of Policy Provisions.** Any waiver or change in any provision of this policy must be in writing. Our request for an appraisal or examination under oath will not waive any of **our** rights.

7. **Cancellation.** You may cancel this policy by telling **us** on what future date **you** wish to stop coverage.

**We** may cancel this policy by delivering to **you** or by mailing to **you**, at **your** last known address shown on **our** records, notice stating when such cancellation will be effective. This notice will be mailed to **you** not less than the minimum number of days required by state law if **you** have not paid **your** premium when it is due or not less than 20 days prior to the effective date of cancellation if:

A. this policy has been in effect less than 60 days at the time notice of cancellation is mailed.

B. this policy has been in effect 60 days and any one of the following conditions exist:
   1. the policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of facts pertinent to acceptance by **us**.
   2. there has been a substantial change in the covered property which increased the hazards **we** originally agreed to insure.
   3. there have been willful or negligent acts or omissions by **you** which increased the hazards **we** originally agreed to insure.
   4. continuation of the policy would be in violation of the law.

In any case of termination of this policy by **us**, **our** mailing of notice to **your** last known address on **our** records will constitute proof of notice as of the date **we** mail it. **We** will comply with any law relating to the termination of this policy which contains different requirements.

If **you** cancel **your** policy, the earned premium may be computed in accordance with **our** short rate method. If **we** cancel **your** policy, the earned premium will be computed pro-rata and the returned premium shall be rounded to the nearest dollar. The refund will be made as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

8. **Nonrenewal.** **We** may elect not to renew this policy. **We** may do so by delivering to **you**, or mailing to **you** at **your** mailing address shown in the Declarations, written notice at least 30 days before the renewal date of this policy. Proof of mailing will be sufficient proof of notice.

9. **Assignment.** **You** may not assign this policy to another person without **our** written consent.

10. **Bankruptcy Or Insolvency.** **Your** bankruptcy or insolvency will not relieve **us** of any obligation under this policy.

11. **Our Recovery Right.** **You** may waive in writing before a loss all rights of recovery against any person. If not waived, **we** may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

    If an assignment is sought, **you** must sign and deliver all related papers and cooperate with **us**.

    This does not apply under Section II to Coverage G - Medical Payments To Others or to the Additional Coverage - 1. Damage to Property of Others.

12. **Premium.** All premiums for this policy will be computed in accordance with **our** rules, rates, rating plans, premiums and minimum premiums in effect at the beginning of **your** current policy period. Each year, on the renewal date of the policy the premium for renewal of this policy will be computed on the basis of **our** manuals then in use. Premiums are payable on the dates set forth by **us**.

    Any premium adjustments made for any reason will be rounded to the nearest dollar, in accordance with the manuals in use by **us**.

In Witness Whereof, we have caused this policy to be signed by our President and our Secretary at Warwick, Rhode Island. In the event that the President or Secretary who signed this contract cease to be our officers, either before or after the contract is issued, the contract may be issued with the same effect as if they were still our officers.

Secretary                    President

# ENDORSEMENT C102A

**Metropolitan Direct Property and Casualty Insurance Company**
**Administrative Offices**
**700 Quaker Lane**
**P.O. Box 350**
**Warwick, Rhode Island  02887**

## CHANGE OF COMPANY NAME ENDORSEMENT

This endorsement attaches to and forms part of **your** policy.

Wherever in the said policy the name First General Insurance Company is used, the name Metropolitan Direct Property and Casualty Insurance Company is hereby substituted.

IN WITNESS WHEREOF, the Metropolitan Direct Property and Casualty Insurance Company has, by its President and Secretary, executed this CHANGE OF NAME ENDORSEMENT.

By: _____          By: _____

       Secretary                              President

CHFCO  87/10/2006  09:26:51  AM

## IDENTITY THEFT AND CREDIT PROTECTION

Under **SECTION I - ADDITIONAL COVERAGES**, item 7. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money** (in form MPL 7081-000 (0698) V.I.P. Homeowners Policy, it is item 6.) is deleted and replaced by:

**Identity Theft and Credit Protection**

A.  **We** will provide, at **our** expense, a representative of **our** choice to assist **you** in resolving issues of unauthorized use of **your** identity or **your** credit information. **Our** obligation under this provision is limited to paying for the services of a representative of **our** choice. The expense of this assistance will not reduce the amount paid under this coverage.

B.  **We** will pay up to $1000 for loss:

   1.  that **you** are legally required to pay because of the unauthorized use of any credit card or electronic fund transfer card issued to or registered in **your** name;

   2.  to **you** caused by forgery or alteration of any check or negotiable instrument; and

   3.  to **you** through acceptance in good faith of counterfeit United States or Canadian paper currency.

   **Exclusion. We** will not pay:

   1.  more than the limit of liability stated above. All loss due to forgery or unauthorized use by any one person or in which that person is concerned is considered one loss;

   2.  any loss caused by **your** dishonesty; or

   3.  any loss resulting from **your** business activities.

**Defense**

A.  **We** may make any investigation and settle any claim or suit that **we** decide is appropriate. **Our** obligation to defend any claim or suit ends when the amount **we** pay for the loss equals **our** limit of liability.

B.  If a suit is brought against **you** for liability under the Identity Theft and Credit Protection coverage, **we** will provide a defense at **our** expense and by counsel of **our** choice.

C.  **We** have the option to defend **you** or **your** bank, at **our** expense, against any suit for the enforcement of payment under the Forgery coverage.

## ENDORSEMENT H435CA

THIS ENDORSEMENT CHANGES YOU POLICY.
READ THIS CAREFULLY.

### FUNGUS AND MOLD AMENDATORY ENDORSEMENT

1. Under **SECTION I - ADDITIONAL COVERAGES:**

   1. item 1. **Loss of Use,** the following is added prior to item A.:

      This Loss of Use Additional Coverage applies upon loss to covered property resulting from a covered cause of loss. However, this Additional Coverage does not apply to damages resulting from fungi, mold, mushrooms, bacteria, mildew, wet rot, or dry rot and any mycotoxins, spores, scents or by-products produced by any of these.

   2. the following is added:

      **Fungus and Mold Remediation. We** will pay up to a limit of $5000 for:

      A. repair or replacement of property damaged by fungi, mold, mushrooms, bacteria, mildew, wet rot, or dry rot and any mycotoxins, spores, scents or by-products produced by any of these due to a covered water loss; and

      B. remediation treatment and remediation testing as necessary to complete the repair or replacement of the damaged property. This coverage applies when property covered under Coverages A, B or C is damaged by a covered water loss. Furthermore, this coverage applies only if all reasonable means were used to save and preserve the property from further damage at and after the time of the covered water loss. This limit includes:

         1. the cost to tear out and replace any part of the covered property necessary to gain access to any organisms listed under remediation treatment; and

         2. if the need for remediation treatment or remediation testing makes the **residence premises** uninhabitable, the reasonable increase in living expenses and **your** loss of rental income. Payment will be for the shortest time required to perform the remediation treatment or remediation testing.

      Remediation treatment means the reasonable and necessary treatment, removal or disposal of fungi, mold, mushrooms, bacteria, mildew, wet rot, or dry rot and any mycotoxins, spores, scents or by-products produced by any of these.

      Remediation testing includes any testing or investigation of either property or air to detect, measure, evaluate or confirm the absence, presence or level of organisms listed under remediation treatment whether performed prior to, during or after remediation treatment.

      The $5000 limit is the most **we** will pay, for any one loss at any one covered location, for the total of all loss or costs payable under this Additional Coverage. This applies regardless of the number of residence premises insured or claims made under this policy.

II. Under **SECTION I - LOSSES WE COVER, COVERAGE C - PERSONAL PROPERTY:**

   1. the first paragraph is deleted and replaced by:

      **We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverage C - Personal Property, except as excluded in this section and in Section I - Losses We Do Not Cover, caused by:

## BACK UP OF SEWER, DRAIN OR SUMP PUMP
### (Optional Coverage 13)

For an additional premium, we agree with **you** that the policy is amended as follows:

Under Section I:

1. Coverage A - Dwelling, Coverage B - Private Structures and Coverage C - Personal Property, when this endorsement is attached to a V.I.P., V.I.P. HO-2, V.I.P. PLUS, or V.I.P. ULTRA policy; or
2. Coverage A - Dwelling and Coverage C - Personal Property, when this endorsement is attached to a V.I.P. Condominium Owners policy; or
3. Coverage C - Personal Property, when this endorsement is attached to a V.I.P. Renters policy,

**we** will pay for accidental loss caused by or resulting from:
1. water which backs up through sewers or drains; or
2. water which enters and overflows from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

We will pay only that part of the loss that exceeds $250 per **occurrence**. All other provisions of this policy apply.

CMFCO 07/19/2006 09:26:51 A

Printed in U.S.A. 6/1/89
MPL 7534-000     0689

## LENDER'S LOSS PAYABLE ENDORSEMENT

**We** agree with **you** that the policy is amended as follows:

1.  Loss or damage, if any, under this policy shall be paid to the Payee named on the first page of this policy, its successors and assigns, hereinafter referred to as "the Lender," in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2.  The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agent of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.

3.  In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, Metropolitan agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by Metropolitan of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of Metropolitan's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4.  Whenever Metropolitan shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, Metropolitan, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and Metropolitan, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

5.  If there be any other insurance upon the within described property, Metropolitan shall be liable under this policy as the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate Metropolitan (pro rata with all other insurers contirbuting to said payment) to all of the Lender's rights of contribution under said other insurance.

6.  Metropolitan reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation

# CALIFORNIA
## WORKERS' COMPENSATION ENDORSEMENT

**We** agree with **you** that:

1. **We** will pay Workers' Compensation benefits to **your** employees subject to Chapter 17, California 1977, 1978 regular sessions.

2. The term "employee" means any private **residence employees** of **yours:**

   a. within the definition in Section 3351 of the California Labor Code; and
   b. not subject to the thresholds in Section 3352(h) of the California Labor Code; and
   c. not excluded under Section 3352 of the California Labor Code.

3. Under SECTION II - LOSSES WE DO NOT COVER, UNDER COVERAGE F - PERSONAL LIABILITY, WE DO NOT COVER: Item 5 is deleted.

4. Under SECTION II - LOSSES WE DO NOT COVER, UNDER COVERAGE G - MEDICAL PAYMENTS TO OTHERS, WE DO NOT COVER BODILY INJURY: Item 4 is deleted.

5. Any terms of this endorsement that are in conflict with the Workers' Compensation Law do not apply.

This insurance does not apply if there is any similar insurance provided under any separate policy, self insurance filing, or deposit covering such employee.

CMFCO 07/10/2006 09:26:51 AM

ENDORSEMENT H683

# CALIFORNIA
## AMENDATORY ENDORSEMENT

**We** agree with **you** that:

A.  Under **Section I - CONDITIONS**, in the first paragraph of the Condition "**Our Settlement Options**", the phrase "within 60 days" is replaced by "within 30 days".

B.  Under **GENERAL CONDITIONS - SECTIONS I AND II**, the General Condition "**Cancellation**" is deleted and replaced by the following:

**Cancellation. You** may cancel this policy by telling **us** on what future date **you** wish to stop coverage.

**We** may cancel this policy by delivering to **you** or mailing to **you**, at **your** last known address as shown on **our** records, notice stating when such cancellation will be effective.

This notice will be mailed to **you** not less than 10 days prior to the effective date of cancellation if:

1.  **you** have not paid **your** premium when it is due; or
2.  this policy has been in effect less than 60 days at the time the notice of cancellation is mailed.

This notice will be mailed to **you** not less than 20 days prior to the effective date of cancellation if this policy has been in effect 60 days or more and there has been a:

1.  Conviction of a crime having as one of its necessary elements an act increasing the hazard insured against; or
2.  Discovery of fraud or material misrepresentation by **you** or **your** representative in obtaining insurance, or by **you** or **your** representative in pursuing a claim under this policy; or
3.  Discovery of grossly negligent acts or ommissions substantially increasing any of the hazards insured against; or
4.  Physical changes in the property insured against which result in the property becoming uninsurable.

In any case of termination of this policy by **us**, **our** mailing of notice to **your** last known address on **our** records will constitute proof of notice as of the date **we** mail it. **We** will comply with any law relating to the termination of this policy which contains different requirements.

If **you** cancel **your** policy, the earned premium may be computed in accordance with **our** short rate method and the return premium will be refunded within a reasonable time after the date cancellation takes effect. If **we** cancel **your** policy, the earned premium will be computed pro-rata and the returned premium shall be rounded to the nearest dollar and refunded within 25 days after the effective date of cancellation.

C.  Under **GENERAL CONDITIONS - SECTIONS I AND II**, the General Condition "**Nonrenewal**" is deleted and replaced by the following:

**Nonrenewal. We** may elect not to renew this policy. **We** may do so by delivering to **you**, or mailing to **you** at **your** mailing address shown in the Declarations, written notice at least 45 days before the renewal date of this policy. Proof of mailing shall be sufficient proof of notice.

CHFCO 07/10/2006 09:26:51 AM

**ENDORSEMENT H770**

# AMENDATORY ENDORSEMENT

**We** agree with **you** that under **SECTION I - ADDITIONAL COVERAGES**, the policy is amended as follows:

A. Under item 1. **Loss of Use:**

    1. Paragraph A. is deleted and replaced by the following:

        A. When a property loss **we** cover under this Section makes that part of the **residence premises** where **you** reside not fit to live in, **we** will pay, at **your** choice, either of the following. However, if the **residence premises** is not **your** principal place of residence, **we** will not provide the option under paragraph 2. below:

            1. **Additional Living Expense. We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living. **Our** liability will not exceed the smallest of:

                a. payment for the shortest time to either repair or replace the **residence premises.** This period of time is not limited by the expiration of this policy; or

                b. payment for the shortest time for **your** household to settle elsewhere, if **you** permanently relocate. This period of time is not limited by the expiration of this policy; or

                c. the limit of liability for **Loss Of Use** as specified in the policy Declarations.

            2. **Fair Rental Value. We** will pay the fair rental value of that part of the **residence premises** where **you** reside less any expenses that do not continue while the premises is not fit to live in. **Our** liability will not exceed the smallest of:

                a. payment for the shortest time to either repair or replace the **residence premises.** This period of time is not limited by the expiration of this policy; or

                b. payment for the shortest time for **your** household to settle elsewhere, if **you** permanently relocate. This period of time is not limited by the expiration of this policy; or

                c. the limit of liability for **Loss Of Use** as specified in the policy Declarations.

    2. Paragraph C.2. (except in the V.I.P. Policy and the V.I.P. Market Value Policy) is deleted in its entirety.

B. Under item 6. **Refrigerated Contents** (except in the V.I.P. Policy and the V.I.P. Market Value Policy), the following sentence is added:

    "The policy deductible does apply to this coverage."

C. Under item 8. **Trees, Shrubs, Plants and Lawns** (except in the V.I.P. Policy and the V.I.P. Market Value Policy), the second paragraph is deleted and replaced by the following:

    **We** will also pay up to $500 for any one loss for the reasonable expenses **you** incur for the removal from **your residence premises** of:

    A. **your** tree(s) felled by windstorm, hail or the weight of ice, snow or sleet, provided the tree is resting on or against the dwelling or building structure or caused damage to property covered under Coverage A - Dwelling or Coverage B - Private Structures (or Coverage C - Personal Property for a V.I.P. Renters Policy and a V.I.P. Condominium Owners Policy);

ENDORSEMENT H781

## LEAD EXPOSURE EXCLUSION ENDORSEMENT

**We** agree with **you** that the following provisions are added to **your** policy:

**SECTION I - LOSSES WE DO NOT COVER**

**We** do not cover loss or damage to the **residence premises** or any property owned, rented or controlled by **you** (including private structures and private approaches), which result directly or indirectly from the presence of lead. **We** do not cover any costs or expenses incurred or loss arising out of:

1. the abatement, neutralization, cleanup, removal, repair, refurbishing or treatment of:

    A. lead;

    B. property containing lead;

    C. soil, or earth containing lead;

    D. water, pipes or plumbing containing lead;

    E. paint, putty, dust or plaster containing lead; or

    F. any other product or substance containing lead.

2. any government directive, law, regulation, request, requirement or mandate to remove, clean up, test, monitor, abate, contain, neutralize or treat:

    A. lead;

    B. property containing lead;

    C. soil, or earth containing lead;

    D. water, pipes or plumbing containing lead;

    E. paint, putty, dust or plaster containing lead; or

    F. any other product or substance containing lead.

**SECTION II - LOSSES WE DO NOT COVER**

Coverage F - Personal Liability and Coverage G - Medical Payments to Others (Coverage F - Business Liability and Coverage G - Premises Medical Payments in the Landlord's Rental Dwelling policy) do not cover:

1. damages arising out of bodily injury caused by or resulting from ingestion, poisoning or exposure to lead; or

2. **property damage** resulting from:

    A. lead;

    B. property containing lead;

    CHFCO 07/10/2006 09:26:51 AM

    C. soil, or earth containing lead;

# ENDORSEMENT H907

## AMENDATORY ENDORSEMENT

Under **GENERAL DEFINITIONS** (**DEFINITIONS** in the DP 00 02 and DP 00 03 policy forms), the following is added:

**"ACTUAL CASH VALUE"** means the amount it would cost to repair or replace damaged property, less allowance for physical deterioration and depreciation.

Throughout the policy and endorsements, the words "actual cash value" shall be replaced with **"actual cash value"**.