Jeffrey A. Charlston (SBN 065427)
Thomas S. Flynn (SBN 194231)
**CHARLSTON, REVICH & CHAMBERLIN LLP**
1925 Century Park East, Suite 1250
Los Angeles, California 90067-2746
Telephone: (310) 551-7000
Facsimile: (310) 203-9321

Attorneys for Plaintiff Metropolitan Direct
Property and Casualty Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| METROPOLITAN DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, a Rhode Island Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>MALCOLM M. SYNIGAL, SR., an individual, and ANGELA M. SYNIGAL, an individual, and DANITA KING, an individual,<br><br>    Defendants. | CASE NO.: C 07-05466 WHA<br><br>**METROPOLITAN'S OPPOSITION TO MALCOLM AND ANGELA SYNIGALS' MOTION TO DISMISS OR STAY**<br><br>[Filed concurrently with Metropolitan's Notice of Lodging of Unreported Opinions]<br><br>Date:    January 24, 2008<br>Time:    8:00 a.m.<br>Courtroom: 9, Hon. William Alsup |

   Plaintiff Metropolitan Direct Property and Casualty Insurance Company ("Metropolitan") hereby opposes Defendants Malcolm and Angela Synigal's Motion to Dismiss or, in the Alternative, Stay This Declaratory Relief Action as follows.

///

///

///

# TABLE OF CONTENTS

1. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    a. The Metropolitan Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    b. Marlin Kills Nadawn Brown and Is Charged with Murder . . . . . . . . . . . . . . . . . . 3

    c. Danita King Files a Wrongful Death Action against Marlin, Malcolm and Angela Synigal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    d. The Synigals Tendered Their Defense and Metropolitan Initiated This Declaratory Relief Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

3. THE COURT SHOULD NOT TO STAY OR DISMISS THIS ACTION BECAUSE THIS ACTION DOES NOT OVERLAP WITH THE UNDERLYING ACTIONS . . . . . . . . . . 5

    a. It Is the Policy of Federal Courts to Adjudicate Claims Within Their Jurisdiction, and this Case Does Not Present an Exception to the Rule . . . . . . . . . . . . . . . . . . 5

    b. The Synigal's Alleged Negligence Is Not At Issue in This Action Because the Policy Precludes *All* Claims Arising Out Of Marlin's Intentional Acts . . . . . . . . 9

    c. There Is No Overlap of Issues Regarding Marlin's Mental Capacity or Intent Because it Is Undisputed in the Criminal and Underlying Actions That Marlin Intentionally Assaulted Ms. Brown, Resulting in Her Death, Thereby Defeating Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        i) There is No Issue as to Marlin's Mental Capacity or Intent Regarding the Lack of "Occurrence" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        ii) There is No Issue as to Marlin's Mental Capacity or Intent Under the Policy's Intentional and Criminal Acts Exclusion . . . . . . . . . . . . . . . . . . 12

4. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co v. Davis*, 430 F.Supp.2d 1112 (D. Haw. 2006) . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Allstate Ins. Co. v. Griffin*, 2006 WL 3334936 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Allstate Ins. Co. v. Harris*, 445 F. Supp. 847 (N.D. Cal. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Allstate Ins. Co. v. Kim*, 121 F. Supp. 2d 1301 (D. Haw. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Allstate Insurance Co. v. Burrough*, 914 F.Supp. 308 (W.D.Ark.1996) . . . . . . . . . . . . . . . . . . . 14

*Allstate Insurance Co. v. Lombardi*, 2003 WL 21666090 (E.D.Pa.2003) . . . . . . . . . . . . . . . . . 13

*Allstate Insurance Co. v. Sheridan*, 82 Fed.Appx. 777 (3rd Cir.2003) . . . . . . . . . . . . . . . . . . . . 13

*Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 10

*Boon v. Allstate Ins. Co.*, 2003 WL 21664170 (C.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cal-Farm Ins. Co. v. TAC Exterminators, Inc.*, 172 Cal. App. 3d 564 (1985) . . . . . . . . . . . . . . . 8

*Cary v. Allstate Insurance Co.*, 130 Wash.2d 335 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Castro v. Allstate Ins. Co.*, 855 F. Supp. 1152 (S.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . 6, 11

*Continental Cas. Co. v. Costal Savings Bank* 977 F.2d 734 (2nd Cir. 1992) . . . . . . . . . . . . . . . . 5

*Espanol v. Allstate Insurance Co.*, 268 Ga.App. 336 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Farmer v. Allstate Ins. Co.*, 311 F. Supp. 2d 884 (C.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . 9

*Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) . . . . . . . . . . . . . . . . 5, 6

*Kimble ex rel. Dedon v. Allstate Insurance Co.*, 710 So.2d 1146 (La.App.1998) . . . . . . . . . . . 13

*Merced Mut. Ins. Co. v. Mendez*, 213 Cal. App. 3d 41 (1989) . . . . . . . . . . . . . . . . . . . . . 1, 10, 11

*Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287 (1993) . . . . . . . . . . . . . . . . . . . . . . 8

*Nationwide Ins. Co. v. Zavalis*, 52 F.3d 689 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Polido v. State Farm Mut. Auto. Ins. Co.*, 110 F. 3d 1418 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . 6

*Quan v. Truck Ins. Exchange.* 67 Cal. App. 4th 583 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

*State Farm Mut. Auto. Ins. Co. v. Davis*, 7 F.3d 180 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . 11

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


Case 3:07-cv-05466-WHA   Document 17   Filed 01/03/2008   Page 4 of 19


Case 3:07-cv-05466-WHA   Document 17   Filed 01/03/2008   Page 4 of 19

*Zurich Ins. Co. v. Alvarez*, 669 F.Supp. 307 (C.D. Cal.,1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Statutes**

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Penal Code § 12022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Penal Code § 187 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Penal Code § 188 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Penal Code § 459 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Penal Code § 460 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Treatises**

SCHWARZER, ET AL., CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2007)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CHARLSTON, REVICH
& CHAMBERLIN LLP
12209cc.wpd

iii
**METROPOLITAN'S OPPOSITION TO THE SYNIGAL'S MOTION TO DISMISS OR STAY
CASE NO. C 07-05466 WHA**

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

In this declaratory relief action, Metropolitan seeks a judicial determination that coverage does not exist under a homeowners insurance policy (the "Policy") it issued to Malcolm M. Synigal, Sr. and Angela M. Synigal (the "Synigals") for claims asserted against them in a wrongful death action brought by Danita King (the "Underlying Action"). Ms. King's claims arise out of the killing of Ms. King's daughter, Nadawn Brown, by Marlin Synigal ("Marlin"), the Synigals' son. There also is a murder action pending against Marlin (the "Criminal Action")

In response to Metropolitan's complaint, the Synigals filed this motion to dismiss or stay the action on the basis that issues overlap between this coverage action on the one hand, and the Criminal and Underlying Actions on the other. The Synigals argue that Marlin's state of mind and mental capacity will be at issue in this action, as it is in the Criminal and Underlying Actions, in part because Marlin is developmentally disabled. Thus, the Synigals argue that there is the potential for duplicative litigation and prejudice.[1]

Marlin's state of mind, however, is irrelevant in this action because it is undisputed that Marlin killed Ms. Brown by bludgeoning her with a barbell and strangling her. Thus, there can be no coverage because coverage only exists under the Policy for bodily injuries which are sustained as a result of an "occurrence."[2]

Under California law, when a person purposefully engages in an *act* (such as Marlin's slaying of Ms. Brown), that act is not an accident, even if the harm and injuries which flow from the act were unintended and unforeseen. "An accident . . . is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." *Merced Mut. Ins. Co. v. Mendez*, 213 Cal. App. 3d

---

[1] As discussed below, this action cannot prejudice Marlin in the Criminal or Underlying Actions because he is not a party to this case.

[2] "Occurrence" is defined in the Metropolitan policy as "an accident, including an accident, including continuous or repeated exposure to substantially the same harmful conditions, resulting in **bodily injury** ... during the term of the policy.

41, 50 (1989). "Under California law, the term refers to *the nature of the insured's conduct, not his state of mind*." *Quan v. Truck Ins. Exchange.* 67 Cal. App. 4th 583, 596 (1998) (italics in original). Thus, irrespective of Marlin's mental capacity, it was conduct that was purposefully engaged in and no coverage exists for Marlin or the Synigals under the Metropolitan Policy.

As a result, the issue of Marlin's mental state present in the Underlying and Criminal Actions is not at issue in this case. Therefore, there is no overlap or duplication of issues justifying a stay or dismissal of this action. Metropolitan is not required to prove, and has no intention of seeking to prove, that Marlin murdered Ms. Brown as that concept is used in the criminal justice system. Nor does Metropolitan need to prove "intentional" versus "negligent" conduct as they are pled in the Underlying Action.[3]

Simply stated, there is no basis for the Court staying this action or abstaining from hearing this matter.

## 2. FACTS

The pertinent facts are undisputed.

### a. The Metropolitan Policy

Metropolitan issued the Synigals homeowners policy number 8993590640, effective February 1, 2006 to February 1, 2007 (the "Policy"). The Policy covered Marlin as an insured. The Policy contained the following pertinent provisions:

> The terms of this policy impose joint obligations on all persons defined as "**you**". This means that the responsibilities, acts and failures to act of a person defined as "**you**" will be binding upon another person defined as "**you**". . . .

---

[3] The Synigals also argue that Marlin might be able to raise self-defense, which would absolve him of liability in the Criminal and Underlying Actions and, they argue, trigger coverage under the Policy. Such a defense, however, would be preposterous given that Marlin, then seventeen, lay in wait with a dumbbell for Ms. Brown, a small, fourteen-year-old female, and used that dumbbell to beat and strangle her to death. This is likely why the underlying pleadings do not allege imperfect self-defense, and is why self-defense is not at issue in this action. ("Imperfect" or "unreasonable" self defense is a form of manslaughter wherein the defendant "kills another person in the actual but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury." CALJIC 5.17.)

> **We** will pay all sums for **bodily injury** . . . to others for which the law holds **you** responsible because of an **occurrence**. . . .
>
> "**BODILY INJURY**" means any bodily harm, sickness or disease. This term includes required care, loss of services and death if it is a result of such bodily injury, sickness or disease.
>
> "**OCCURRENCE**" means an accident, including continuous or repeated exposure to substantially the same harmful conditions, resulting in **bodily injury** . . . during the term of the policy.
>
> "**YOU**" and "**YOUR**" mean:
>
> 1. the person or persons named in the Declarations and if a resident of the same household:
>    - A. the spouse of such person or persons;
>    - B. the relatives of either;
>    - C. any other person under the age of twenty-one and, in the care of any of the above.
>
> **UNDER COVERAGE F - PERSONAL LIABILITY . . . WE DO NOT COVER**
>
> 1. **bodily injury** . . . which is reasonably expected or intended by you or which is the result of your intentional and criminal acts. This exclusion is applicable *even if you lack the mental capacity, for whatever reason, to govern your conduct*.

(Italics added.) The Policy is Exhibit C to the Metropolitan Complaint.

### b. Marlin Kills Nadawn Brown and Is Charged with Murder

On March 22, 2006, Marlin killed Ms. Brown. Marlin was arrested the same day and confessed to Ms. Brown's murder. On March 24, 2006, authorities filed a criminal complaint against Marlin in the Contra Costa Superior Court, charging him with the murder of Ms. Brown under Penal Code § 187 and burglary under Penal Code §§ 459 and 460(a), Case No. 220484-0. For each count, the People also alleged the following charge enhancement under Penal Code §

12022(b)(1):

> . . . in the commission and attempted commission of the above offense the Defendant, MARLIN SYNIGAL, personally used a Dumbbell Bar, a deadly and dangerous weapon.

The criminal complaint is attached to Metropolitan's Complaint as Exhibit A.

Marlin never entered a plea. Instead, on June 21, 2006, the court ruled Marlin was incompetent to stand trial. The Court ordered Marlin held at the California Youth Authority, where Marlin was to receive further mental evaluation and training so that he might become competent to stand trial.

To date it appears Marlin remains in the Youth Authority awaiting transfer to a state psychiatric hospital. [Sebransky Decl. in Supp. of Mot. to Dismiss or Stay, Ex. 1, Oct. 8, 2007, Gagen Letter to Conine.]

### c. Danita King Files a Wrongful Death Action against Marlin, Malcolm and Angela Synigal

On August 29, 2007, Ms. King filed a wrongful death complaint against the Synigals and Marlin in the Contra Costa Superior Court, Case No. C07-01910. The form complaint, which is terse, contains the following allegations:

**FIRST CAUSE OF ACTION—General Negligence**

> Defendants Malcolm Synigal and Angela M. Synigal negligently supervised their son, Marlin Synigal and as a direct and proximate cause of their negligent supervision, Plaintiff's daughter was assaulted, battered and killed by Defendant's son, all to Plaintiff's damage.
>
> Defendant Marlin Synigal was negligent in the manner in which he acosted [sic] Plaintiff's daughter, Nadawn Brown, and as a direct an [sic] proximate result of said negligence, Nadawn Brown was killed and Plaintiff sustained damages.

**SECOND CAUSE OF ACTION—Intentional Tort**

> Defendant Marlin King [sic] intentionally assaulted the person of Nadawn Brown, directly and proximately causing her death all to Plaintiff's damage.

**EXEMPLARY DAMAGES ATTACHMENT**

Defendant entered Plaintiff's home unlawfully, waited in hiding for the arrival of Nadawn Brown, assaulted, battered and killed her when she entered the home.

### d. The Synigals Tendered Their Defense and Metropolitan Initiated This Declaratory Relief Action

The Synigals and Marlin tendered their defense of the Underlying Action to Metropolitan. Metropolitan agreed to defend while reserving its right to initiate this declaratory relief action to determine that the Policy offered no coverage based on Marlin's intentional killing of Ms. Brown. On October 23, 2007, Metropolitan filed this action.

## 3. THE COURT SHOULD NOT TO STAY OR DISMISS THIS ACTION BECAUSE THIS ACTION DOES NOT OVERLAP WITH THE UNDERLYING ACTIONS

### a. It Is the Policy of Federal Courts to Adjudicate Claims Within Their Jurisdiction, and this Case Does Not Present an Exception to the Rule

The Declaratory Judgment Act, 28 U.S.C. § 2201, states that courts *may* declare rights, and, thus, is discretionary. Such discretion, however, is not unlimited. Normally, "federal courts should adjudicate claims within their jurisdiction" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Moreover, the Court "'cannot decline to entertain [a declaratory judgment action] as a matter of whim or personal disinclination'". *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998).

It is true that this general principle "yields to considerations of practicality and wise judicial administration". *Id.* However, courts should adjudicate claims when, "'(1) the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984). Indeed, if either of these criteria are met, it may be error for the court to decline to exercise jurisdiction. *Id.* at 1471, *Continental Cas. Co. v. Costal Savings Bank* 977 F.2d 734, 737 (2nd Cir. 1992).

Moreover, the existence of related state court actions does not automatically mean that the Court should decline jurisdiction. *Dizol*, 133 F.3d at 1225. The factors to be considered are as

follows:

1) To avoid needless determination of state law issues.

2) To discourage forum shopping.

3) To avoid duplicative litigation.

4) Whether the declaratory action will settle all aspects of the controversy.

5) Whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue.

6) Whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage.

7) Whether the use of a declaratory action will result in entanglement between the federal and state court systems.

8) The convenience of the parties, and the availability and relative convenience of other remedies."

*Id.* at 1225 fn.5.

The Ninth Circuit examined these criteria in *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366-1367 (9th Cir. 1991). In *Chamberlain*, the insurer filed a declaratory relief suit after the insured already sued the insurer under the policy in state court, a so-called "reactive suit." Even then, with parallel[4] state and federal coverage actions proceeding over the same policy and the same underlying claim, the Ninth Circuit held that the District Court properly exercised jurisdiction and entered summary judgment for the insurer. *Id.* at 1367.

The Synigals cite a number of cases for the proposition that declaratory relief is improper if the coverage issues turn on the facts at issue in the underlying action. These cases, however,

---

[4] The Synigals contend that the Court should refuse jurisdiction when there is a "parallel" state action, and that a "parallel" state action exists when there is an "overlap" of factual questions, citing SCHWARZER, ET AL., CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2007), pp. 10-24, sections 10:52 – 10:52.1, and *Polido v. State Farm Mut. Auto. Ins. Co.*, 110 F. 3d 1418, 1423 (9th Cir. 1997). [Mot., p.4:15-24.] Actually, *Polido* stated that whether there was a "parallel" state case was not dispositive. *Id.* In any event, the issue in *Polido* was whether a Court had the duty to determine *sua sponte* whether declaratory relief was appropriate. *Polido* held yes, but was overturned in *Dizol*, 133 F.3d 1220 (en banc).

are distinguishable. For example, in, *Allstate Ins. Co. v. Harris*, 445 F. Supp. 847 (N.D. Cal. 1978), the insured brought into question the application of the policy's intentional acts exclusion by claiming imperfect self defense. However, there is no imperfect self defense at issue in this action. In *Zurich Ins. Co. v. Alvarez*, 669 F.Supp. 307 (C.D. Cal.,1987), it was disputed whether the insured manufactured a taser that allegedly killed plaintiff's father. Here, there is no dispute that Marlin is responsible for Ms. Brown's death.

Moreover, *Nationwide Ins. Co. v. Zavalis*, 52 F.3d 689 (7th Cir. 1995), which the Synigals cite, is distinguishable because it applies Pennsylvania law which defines "occurrence" more broadly than California law does. In *Zavalis*, the insured set fire to his university's artificial turf field intending to burn three letters into it. Instead, the fire went out of control and one-half of the field was destroyed. The university sued the insured and the insurer sued for declaratory relief. The court dismissed the declaratory relief action on the basis that, under Pennsylvania law, the extent of damage the insured intended to cause was at issue in the underlying and coverage actions. Under California law, however, the extent of damage the insured intended would be irrelevant to the coverage action. As the discussion below illustrates, the insured's intent to set the fire, which later went out of control, would have negated an "occurrence" and, thus, coverage under California law. Under California law, the facts in *Zavalis* would not have created an overlap between the coverage action and the underlying liability action and would not have justified dismissing the coverage action.

In these cases and the other cases the Synigals cite, the issues of coverage hinged on disputed factual issues in the underlying cases. Thus, the factors enumerated above, particularly the extent of duplicative litigation, worked in favor of declining jurisdiction.

In contrast, and contrary to the Synigals' bald assertions, this action will not address issues in the Underlying or Criminal Actions. As demonstrated below, unlike the Underlying and Criminal Actions, Marlin's diminished capacity is irrelevant to the questions of coverage. It is undisputed that Marlin deliberately injured Ms. Brown, which injuries caused her death. Under California law, whether he had diminished capacity at the time is irrelevant to the existence or nonexistence of coverage.

Moreover, there are fundamental factors favoring declaratory relief here. Declaratory relief will settle all aspects of this coverage controversy and "serve a useful purpose in clarifying and settling the legal relations in issue, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Brown*, 738 F.2d at 1470. By this action, Ms. King, the Synigals and Metropolitan can determine where they stand, likely through summary judgment in a relatively short amount of time. Such result is much preferable to the one the Synigals suggest, whereby the parties stand by indefinitely in limbo waiting for Marlin to be declared competent to stand trial.

In addition, this case will not require the Court to decide unsettled state law issues. California jurisprudence regarding the "occurrence" is well developed, as the cases below demonstrate. Also, there is no indication of "forum shopping", such as Metropolitan filing this action in reaction to a coverage action the Synigals initiated in state court.

The Synigals further argue that the Court must stay or dismiss this action to prevent prejudice to the insured by forcing the insured to fight a "two-front war". By this reasoning, however, an insurer could never seek declaratory relief while an underlying action was pending. This is not the law, and is not what the Synigals' cited cases stand for.

The Synigals cite *Cal-Farm Ins. Co. v. TAC Exterminators, Inc.*, 172 Cal. App. 3d 564, 580 (1985) as stating, "If an immediate action for declaratory relief were allowed, 'the duty to defend eventually would be no broader than the duty to indemnify.'" [Mot. at pp. 7:27-8:1.] This is out of context. *Cal-Farm* actually stated that such *would be* the result if it had adopted the plaintiff's interpretation of the policy, which it did not. *Cal-Farm* did not announce a broad prohibition against filing declaratory relief suits.

Furthermore, the concurring opinion the Synigals cite from *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 305 (1993), simply stands for the proposition that a declaratory relief action must be stayed where it hinges on facts at issue in the underlying action. The opinion also recognized that a declaratory relief action *may* proceed, "if the insurer's defense to coverage hinges on factual issues that are unrelated to the issues in the third party liability action." *Id.* As this is the case presently, the Court should decline to stay or dismiss this action.

**b.     The Synigal's Alleged Negligence Is Not At Issue in This Action Because the Policy Precludes *All* Claims Arising Out Of Marlin's Intentional Acts**

The Synigals argue that regardless of Marlin's intent, the Underlying Action alleges negligent supervision against the Synigals, that the negligent supervision claim is not dependent on whether Marlin committed an intentional or criminal act, and, thus, they are "certainly" covered. [Mot., pp. 8:26-9:5.] However, coverage for the Synigals is *entirely* dependent on whether Marlin's actions constituted an "occurrence" or triggered the intentional and criminal acts exclusion. Accordingly, the Synigal's alleged negligent supervision is irrelevant to this action.

As quoted above, the Policy states that acts by one insured are binding on the other insureds. Under California law, such joint obligations clauses in homeowners' policies serve to preclude coverage for *all* insureds for claims arising out of intentional conduct. *Farmer v. Allstate Ins. Co.*, 311 F. Supp. 2d 884 (C.D. Cal. 2004) (joint obligation clause precluded coverage for wife for negligent supervision of husband who molested child); *Castro v. Allstate Ins. Co.*, 855 F. Supp. 1152 (S.D. Cal. 1994) (joint obligations clause precluded coverage for mother for negligent supervision of minor son who murdered rival gang member); *Boon v. Allstate Ins. Co.*, 2003 WL 21664170 (C.D. Cal.) (joint obligations clause precluded coverage for wounded police officer's negligence claims against wife who failed to inform the officer that the husband was mentally unstable and had threatened to shoot the police) [Notice of Lodging of Unreported Opinions, Ex. 1].

Accordingly, Marlin's non-accidental conduct defeats coverage for Ms. King's claims of negligent supervision against the Synigals. As such, the Synigal's actual negligence and culpability are not at issue in this case and presents no "overlap" with the underlying action justifying a stay or dismissal.

///

///

///

  **c. There Is No Overlap of Issues Regarding Marlin's Mental Capacity or Intent Because it Is Undisputed in the Criminal and Underlying Actions That Marlin Intentionally Assaulted Ms. Brown, Resulting in Her Death, Thereby Defeating Coverage**

   **i) There is No Issue as to Marlin's Mental Capacity or Intent Regarding the Lack of "Occurrence"**

The Synigals argue that the question of Marlin's intent and developmental deficits "overlap" with issues in this case, and, therefore, Metropolitan's prosecution of this case would prejudice the Synigals' and Marlin's defenses in the Criminal and Underlying Actions. These contentions have no merit.

Initially, Marlin is not a party to this case. Therefore, the outcome of this case will not subject him to collateral estoppel or otherwise prejudice his defense.

Moreover, the *mens rea* issues in the Underlying and Criminal Actions are irrelevant to this action. There is no issue of imperfect self-defense as the Synigals argue. Neither the civil nor criminal complaints allege Marlin used unreasonable force defending himself. Indeed, the criminal complaint alleges residential burglary and that Marlin murdered Nadawn Brown using, "a Dumbbell Bar, a deadly and dangerous weapon". [Metropolitan Complaint, Ex. A.] The civil complaint alleges Marlin attacked Ms. Brown intentionally or "negligently accosted" Ms. Brown to death. [Metropolitan Complaint, Ex. A.] These are not allegations of self defense, nor do they possibly lead to bald speculation that Marlin acted in self defense.

Further, these allegations do not describe an "occurrence," regardless of Marlin's mental state. Under California insurance law, an "occurrence" or "accident" refers to "the happening of the event itself and not the consequences of that act." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1148 (9th Cir. 1998). An accident is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage. *Merced Mutual*, 213 Cal. App. 3d at 50. "Accident" refers to the nature of the insured's conduct, not his state of mind. *Quan*, 67 Cal. App. 4th at 596.

///

1   Thus, when the injury suffered is the result of an unbroken chain of intentional conduct,
2   such injury was not caused by an "occurrence" merely because the insured did not intend to
3   produce any harm or injury thereby. *State Farm Mut. Auto. Ins. Co. v. Davis*, 7 F.3d 180, 183 (9th
4   Cir. 1993); *Merced Mutual*, 213 Cal.App.3d at 50.  Moreover, the way that a complaint labels an
5   insured's acts is irrelevant to the determination of whether those acts are an "accident."
6   *Chamberlain*, 931 F.2d at 1365.  As a result, the fact that a victim of the insured's deliberate and
7   purposeful act may seek to recover on theories of "negligence" does not change the nature of the
8   conduct itself.  *Id.*

9   Following these principles, a Northern California District Court found a psychotic knife
10  attack was *not* an "occurrence" under a homeowners policy similar to the Policy in *Allstate Ins.*
11  *Co. v. Griffin*, 2006 WL 3334936 (N.D. Cal.) [Notice of Lodging of Unreported Opinions, Ex. 2.]
12  In *Griffin*, the victim sought coverage under a psychotic's homeowners policy for injuries the
13  victim sustained when the psychotic attacked her with a steak knife.  The insured was found
14  guilty of an assault with a deadly weapon, but was found insane at the time of the attack.  One
15  psychiatric report described the insured's mental state as follows:

16   On the day of the attack, Griffin believed that the initial victim that he chased was
17   "Lucifer" and that he was commanded by God to attack Lucifer or face
18   punishment. . . .  However, during the Moreland Attack, Griffin knew he was
19   attacking a person with a knife and that such an attack would cause injury. . . ."
20   Nonetheless, Dr. Kline concluded that "in this state of mind, it is highly unlikely
21   that [Griffin] had the capacity to reflect on the consequences to the victim, as he
22   was compelled by psychotic symptoms he experienced as a religious emergency to
23   secure his own survival."

24  *Id.* at *2.  A second psychiatrist opined that the insured knew what he was doing but could not
25  control his actions because of his psychosis.  The psychiatrist stated, "although Griffin knew
26  objectively that stabbing or choking someone could produce bodily harm, in that moment at
27  Denny's, Griffin did not understand the aggressive nature of his actions; he was 'operating
28  without thought.'"  *Id.* at *3.

Yet, even though the insured was far removed from reality, the Court held that there was no "occurrence". Noting that, "the term 'accidental' referred to the insured's conduct, not his state of mind", the Court found there was no "accident" because the insured knew he was attacking another person. *Id.* at *4, *6.

Thus, *it does not matter* whether Marlin had developmental disabilities or other mental impairment at the time that precluded him from forming the specific intent to *murder* Ms. Brown—i.e., to form *malice*.[5] The question for this case, as distinct from the Criminal Action, is whether Marlin had the intent to perform the acts that resulted in Ms. Brown's death. Here, there is no dispute that Marlin intentionally bludgeoned and strangled Ms. Brown.

Moreover, while the Synigals speculate about self-defense, negligence or a "tragic accident," none of the underlying pleadings allege such events. Neither the Underlying or Criminal Action allege Marlin acted in self defense, and not even the Synigals dispute that Marlin is responsible for Ms. Brown's death.

In addition, the *mens rea* that is alleged in the Criminal and Underlying Actions ranges from the specific intent to murder, to intentional assault, to negligence "in the manner in which he accosted" Ms. Brown. Thus, there is no "occurrence" because even if Marlin was "negligent in the matter in which he accosted" Ms. Brown, *he still accosted—i.e. acted with aggression towards—Ms. Brown in a manner which resulted in her death.*

Thus, given that the plaintiffs in the Criminal and Underlying Actions do not allege an "occurrence", and it is undisputed that Marlin brought about Ms. Brown's death, there are no disputed facts this action has in common with the Criminal or Underlying Actions.

## ii) There is No Issue as to Marlin's Mental Capacity or Intent Under the Policy's Intentional and Criminal Acts Exclusion

For the same reasons, issues in the Criminal and Underlying Actions do not overlap with Metropolitan's claims that the Policy's intentional/criminal acts exclusion precludes coverage.

---

[5] Penal Code § 188 states that, "malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.

1 The Criminal and Underlying Actions' undisputed facts trigger the exclusion: that Marlin, at
2 least, "accosted" Ms. Brown, resulting in her death.

3   The Synigals, however, argue that there is overlap because the exclusion implicates
4 Marlin's state of mind. However, this is not the case, because the exclusion explicitly applies
5 regardless of Marlin's mental capacity.

6   The overwhelming authority interpreting similar intentional/criminal acts exclusions in
7 homeowners policies holds that the insured's mental capacity is irrelevant in determining whether
8 the exclusion applies. For example, in *Allstate Ins. Co v. Davis*, 430 F.Supp.2d 1112 (D. Haw.
9 2006), parent insureds sought coverage after their minor child sexually assaulted and murdered a
10 neighbor's child. At the criminal trial the court found that the prosecution proved second degree
11 murder and sexual assault, but acquitted the perpetrator on the basis of "'mental disease, disorder
12 or defect'". *Id.* at 1118.

13   The decedent's family sued the parents for negligent supervision. The homeowners
14 insurer sought declaratory relief against the perpetrator and the parents. The Court ruled that the
15 intentional/criminal acts exclusion precluded coverage for all of the insureds. The Court stated:

16      The Policy states "[w]e do not cover any bodily injury . . . intended by, or
17      which may reasonably be expected to result from the intentional or criminal acts
18      . . . of, any insured person. This exclusion applies even if . . . such insured person
19      lacks the mental capacity to govern his or her conduct." . . .
20      In cases where courts applied identical or similar mental capacity exclusions as in
21      the underlying Policy to acts that were not accidents, the overwhelming majority
22      of courts held that the insured's intent is irrelevant when the basis for challenging
23      whether the insured acted intentionally is insufficient mental capacity. *Kimble ex*
24      *rel. Dedon v. Allstate Insurance Co.*, 710 So.2d 1146 (La.App.1998); *Allstate*
25      *Insurance Co. v. Lombardi*, 2003 WL 21666090, *5 (E.D.Pa.2003) ("the Policy
26      explicitly contemplates precisely the kind of intentional acts, undertaken while in a
27      psychotic state, which, according to Defendants, occurred here, and the Policy
28      expressly excludes from coverage injuries resulting from such acts...."); *Allstate*

> *Insurance Co. v. Sheridan*, 82 Fed.Appx. 777, 779 (3rd Cir.2003) ("by the express terms of the policy, [defendant's] purported lack of mental capacity at the time of the shooting is irrelevant") [footnote]; *Allstate Insurance Co. v. Burrough*, 914 F.Supp. 308, 312 (W.D.Ark.1996) (expressing in dicta that the identical mental capacity exclusion presumably bars coverage even when a mentally incompetent insured could not be prosecuted for criminal conduct because of his mental capacity); *Cary v. Allstate Insurance Co.*, 130 Wash.2d 335, 922 P.2d 1335 (1996) (affirming there was no coverage for a mentally insane insured because the policy excluded criminal conduct whether the insured was sane or not and that the provision did not violate public policy); *Espanol v. Allstate Insurance Co.*, 268 Ga.App. 336, 601 S.E.2d 821 (2004).

*Id.* at 1128-29. Thus, the Court concluded, "In accord with the national consensus, the Court concludes that Mark committed an act that was not an accident, and that the mental capacity exclusion renders irrelevant a determination as to whether he acted intentionally." *Id.* at 1130. *See also Allstate Ins. Co. v. Kim*, 121 F. Supp. 2d 1301, 1306 (D. Haw. 2000) (lack of conviction did not preclude application of intentional/criminal acts exclusion).

Accordingly, the Synigals' authorities stating that Metropolitan must continue to defend until Marlin's intent is determined are irrelevant as they rely on distinguishable policy language. Regardless of the extent to which Marlin's intent may be at issue in the Criminal and Underlying Actions, Marlin's intent is irrelevant in this action, pursuant to the explicit policy language, and because it is undisputed that Marlin bludgeoned and strangled Ms. Brown to death. Thus, there is no overlap justifying a stay or dismissal of this action.

///

///

///

### 4. CONCLUSION

For the foregoing reasons, the Court should exercise its jurisdiction to hear this action and deny the Synigal's motion to dismiss or stay.

DATED: January 3, 2008

CHARLSTON, REVICH & CHAMBERLIN LLP
JEFFREY A. CHARLSTON
THOMAS S. FLYNN

By: _____/S/_____
   Thomas S. Flynn
   Attorneys for Plaintiff Metropolitan Direct
   Property and Casualty Insurance Company