| | |
|---|---|
| 1 | Jeffrey A. Charlston (SBN 065427) |
| | Thomas S. Flynn (SBN 194231) |
| 2 | **CHARLSTON, REVICH & CHAMBERLIN LLP** |
| | 1925 Century Park East, Suite 1250 |
| 3 | Los Angeles, California 90067-2746 |
| | Telephone: (310) 551-7000 |
| 4 | Facsimile: (310) 203-9321 |

Attorneys for Plaintiff Metropolitan Direct
Property and Casualty Insurance Company

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| METROPOLITAN DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, a Rhode Island Corporation, | CASE NO.: C 07-05466 WHA |
| Plaintiff, | **METROPOLITAN'S NOTICE OF LODGING UNREPORTED OPINIONS IN OPPOSITION TO THE SYNIGALS' MOTION TO STAY OR DISMISS** |
| v. | |
| MALCOLM M. SYNIGAL, SR., an individual, and ANGELA M. SYNIGAL, an individual, and DANITA KING, an individual, | [Filed concurrently with Metropolitan's Opposition to the Synigals' Motion to Stay or Dismiss] |
| Defendants. | Date: January 24, 2008<br>Time: 8:00 a.m.<br>Courtroom: 9, Hon. William Alsup |

    Plaintiff Metropolitan Direct Property and Casualty Insurance Company ("Metropolitan") hereby lodges the following unreported California Federal District Court opinions in opposition to the Motion to Dismiss or Stay of Malcolm and Angela Synigal:

///

///

///

Charlston, Revich & Chamberlin LLP
1221Occ.wpd

**METROPOLITAN'S NOTICE OF LODGING UNREPORTED OPINIONS IN OPPOSITION TO THE SYNIGALS' MOTION TO STAY OR DISMISS—CASE NO. C 07-05466 WHA**

1. *Boon v. Allstate Ins. Co.*, 2003 WL 21664170 (C.D. Cal. No. CV 02-5216-RGK (JWJX)).

2. *Allstate Ins. Co. v. Griffin*, 2006 WL 3334936 (N.D. Cal. No. C 05-0292 PVT).

DATED: January 3, 2008        CHARLSTON, REVICH & CHAMBERLIN LLP
JEFFREY A. CHARLSTON
THOMAS S. FLYNN


By: _____/S/_____
    Thomas S. Flynn
    Attorneys for Plaintiff Metropolitan Direct
    Property and Casualty Insurance Company

Charlston, Revich
& Chamberlin LLP
1221Occ.wpd

2
**METROPOLITAN'S NOTICE OF LODGING UNREPORTED OPINIONS IN OPPOSITION TO THE SYNIGALS' MOTION TO STAY OR DISMISS—CASE NO. C 07-05466 WHA**

# Exhibit 1

Not Reported in F.Supp.2d                                                                                             Page 1
Not Reported in F.Supp.2d, 2003 WL 21664170 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Boon v. Allstate Ins. Co.
C.D.Cal.,2003.
Only the Westlaw citation is currently available.
United States District Court,C.D. California.
Donald BOON, et al.
v.
ALLSTATE INSURANCE COMPANY, etc., et al.
No. CV 02-5216-RGK(JWJX).

July 7, 2003.

Insured husband and wife homeowners brought action against homeowner's liability insurer alleging breach of contract, tortious breach of implied covenant of good faith and fair dealing, professional negligence, and violation of various insurance codes based upon insurer's refusal to defend her in personal injury action brought by police officer shot by husband while responding to wife's emergency call. On cross-motions for summary judgment, the District Court R. Gary Klausner, J., held that insurer did not have duty to defend wife.

Defendant's motion granted.
West Headnotes
**Insurance 217 ⚷═2278(3)**

217 Insurance
    217XVII Coverage--Liability Insurance
        217XVII(A) In General
            217k2273 Risks and Losses
                217k2278 Common Exclusions
                    217k2278(2) Intentional Acts or Injuries
                    217k2278(3) k. In General. Most Cited Cases
Under California law, homeowner's liability insurer did not have duty to defend homeowner-wife in personal injury action brought by police officer who was shot by homeowner-husband while responding to wife's emergency call, where **policy** excluded coverage for "intentional or criminal" **acts**, and exclusion of husband automatically triggered exclusion of wife under the **obligations** provisions.

*CIVIL MINUTES-GENERAL*
KLAUSNER, J.

PROCEEDINGS: IN CHAMBERS-ORDER

I. *FACTUAL BACKGROUND*

**\*1** This action is brought by Plaintiffs Milagro Rivera and Donald and Crystal Boon [FN1] (collectively "Plaintiffs") against Defendant Allstate Insurance Company ("Allstate") for:

> FN1. Donald and Crystal Boon are husband and wife, and may be collectively referred to as "the Boons." Donald Boon, a police officer at the time the relevant events in this action arose, may also be referred to as "Officer Donald Boon."

(1) Breach of Contract;
(2) Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing;
(3) Professional Negligence; and
(4) Violation of Various Insurance Codes.

The dispute in this case mainly arises from a disagreement over coverage in an Allstate insurance **policy**.

On July 12, 1997, Allstate issued a "Deluxe Plus Homeowner's" insurance **policy** ("the **Policy**") to Plaintiff Milagro Rivera and her husband Reynaldo Rivera ("Mr.Rivera") (collectively, "the Riveras"). Among other things, the **Policy** covered "damages in which an insured **person** becomes legally **obligated** to pay because of bodily injury or property damage," and it required Allstate to defend the Riveras in legal actions arising from any potentially covered claim, and to indemnify the Riveras for covered claims. The **Policy** also contained an Exclusionary Clause which stated that Allstate "d[id] not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal **acts** or omis-

Case 3:07-cv-05466-WHA   Document 18   Filed 01/03/2008   Page 5 of 20

Not Reported in F.Supp.2d  Page 2
Not Reported in F.Supp.2d, 2003 WL 21664170 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

sions of, any insured **person**...." The **Policy** also contained "**JointObligations** Provisions," which make the intentional or criminal **acts** of **persons** named on the declaration page **binding** upon each other. The Riveras are named insureds on the declaration page of the **Policy**.

On January 15, 1998, Officer Donald Boon responded to a 911 call from the Riveras' residence. Upon arrival, he encountered Plaintiff Milagro Rivera outside the residence. Her husband, Mr. Rivera, then shot Officer Donald Boon after he entered the residence. When the Los Angeles Police Department interviewed Plaintiff Milagro Rivera later, she stated that she knew that her husband became nervous around police officers, that he had just prior to the 911 call threatened to shoot her and her child, that Mr. Rivera had been placed on a 30 day hold for mental instability, that she knew Mr. Rivera would attempt to shoot or kill a police officer or someone else, and that she had sought psychiatric intervention for Mr. Rivera. Plaintiff Milagro Rivera failed to convey this information to Officer Donald Boon before he entered the Rivera residence and was shot by Mr. Rivera.

On January 5, 1999, the Boons filed an action in the Superior Court of California for the County of Los Angeles ("Superior Court") against both Plaintiff Milagro Rivera and Mr. Rivera for personal injuries the Boons suffered ("State Civil Action"). Donald and Crystal Boon alleged that Milagro Rivera's negligence, along with the conduct of Mr. Rivera, caused personal injuries to Donald and Crystal Boon.FN2

> FN2. Specifically, Donald and Crystal Boon asserted claims for negligence, negligent infliction of emotional distress, and loss of consortium.

On December 10, 1998, the Riveras tendered the defense of the State Civil Action to Allstate, which Allstate asserts it accepted under a reservation of rights. Defendant sent a letter to Plaintiff Milagro Rivera explaining that it was reserving its "right to later disclaim any obligation under the policy."Allstate's coverage counsel, David Prager ("Mr.Prager"), advised Defendant Allstate that until Mr. Rivera was convicted of a crime, it should provide a defense to the Riveras. To avoid the conflict of interest between Milagro Rivera and Mr. Rivera, Allstate provided separate counsel for each of them, and defended Mr. Rivera in both the criminal suit against him ("State Criminal Action") and in the State Civil Action against both Riveras until the criminal action against Mr. Rivera resulted in a conviction. In the State Criminal Action, the Superior Court convicted Mr. Rivera on September 1, 1999 of two counts of felony machine gun assault.FN3

> FN3. On September 20, 1999, after Mr. Rivera had pled guilty to, and was convicted of, two counts of felony assault on a police officer pursuant to California Penal Code § 245(d)(3), Allstate's coverage attorney, Mr. Prager, provided a supplemental opinion letter stating that the Policy excluded coverage for liability derived from "intentional or criminal acts," and thus did not cover Mr. Rivera's liability. Mr. Prager also determined that the Policy did not cover Plaintiff Milagro Rivera's liability, because it arose from her husband's criminal act in the State Civil Action. After Mr. Rivera was convicted, Allstate informed him that it would cease providing him with any defense in 30 days.

*2 In the State Civil Action, the Superior Court sustained a demurrer on the Boons' negligence claims against Milagro Rivera. The Boons appealed the court's order. While the Boons' appeal of the trial court's demurrer as to Milagro Rivera's negligence was under review at the California Court of Appeals, Mr. Rivera was convicted in the State Criminal Action. As such, Allstate immediately informed Milagro Rivera that it might not be able to continue to provide a defense for her. The California Court of Appeals reversed the trial court's demurrer as to the Boons' negligence claims against Milagro Rivera, and remanded the suit to Superior Court. After the California Court of Appeals re-

Case 3:07-cv-05466-WHA    Document 18    Filed 01/03/2008    Page 6 of 20

Not Reported in F.Supp.2d                                                                                                          Page 3
Not Reported in F.Supp.2d, 2003 WL 21664170 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

versed the demurrer, Allstate withdrew its defense.

On February 4, 2002, Donald and Crystal Boon obtained a judgment against the Riveras in the State Civil Action in the amount of $7,239,000. The Superior Court found that Plaintiff Milagro Rivera's independent negligence proximately caused 49% of the Boons' injuries. Plaintiff Milagro Rivera subsequently assigned to Donald and Crystal Boon her indemnity claims against Allstate, but retained her right to pursue damages resulting from Allstate's refusal to defend her after the California Court of Appeals' decision.

Presently before this Court are the following three Motions for Summary Judgment:
(1) Defendant Allstate's Motion for Summary Judgment ("Defendant Allstate's Motion");
(2) Plaintiff Milagro Rivera's Motion for Summary Judgment ("Plaintiff Milagro Rivera's Motion");
(3) Plaintiffs Donald and Crystal Boon's Motion for Summary Judgment ("Plaintiffs Donald and Crystal Boon's Motion").

For the reasons discussed below, this Court grants Defendant Allstate's Motion and denies Plaintiff Milagro Rivera's Motion and Plaintiffs Donald and Crystal Boon's Motion.

## II. *JUDICIAL STANDARD FOR SUMMARY JUDGMENT*

Under the Federal Rules of Civil Procedure, summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. *Id.;*Fed.R.Civ.P. 56(e).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *Anderson,* 477 U.S. at 250-51, 106 S.Ct. at 2511. The non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders her claim implausible. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, mere disagreement or the bald assertion that a genuine issue of material fact exists no longer precludes the use of summary judgment. *Harper v. Wallingford,* 877 F.2d 728 (9th Cir.1989); *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987).

**\*3** If the moving party seeks summary judgment on a claim or defense on which it bears the burden of proof at trial, it must satisfy its burden by showing affirmative, admissible evidence. Unauthenticated documents cannot be considered on a motion for summary judgment. *Hal Roach Studios v. Richard Feiner and Co.,* 896 F.2d 1542, 1550 (9th Cir.1990).

On a motion for summary judgment, admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. Fed.R.Civ.P. 56(e). Declarations on "information and belief" are inappropriate to demonstrate a genuine issue of fact. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

On a motion for summary judgment in an insurance context, the insurer must show that the underlying claim cannot come within the policy coverage either by virtue of the scope of the insuring clause or the breadth of the exclusion to establish an ab-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05466-WHA   Document 18   Filed 01/03/2008   Page 7 of 20

Not Reported in F.Supp.2d                                                                                                         Page 4
Not Reported in F.Supp.2d, 2003 WL 21664170 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

sence of duty to defend. *Zelda, Inc. v. Northland Ins. Co.,* 56 Cal.App.4th 1252, 1260, 66 Cal.Rptr.2d 356 (1997) (citing *Montrose Chem. Corp. v. Sup. Crt. (Canadian Universal Ins. Co., Inc.),* 6 Cal.4th 287, 297, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993)). The insured must prove the existence of a potential for coverage to prevail, while the insurer much establish the absence of any such potential. *Montrose,* 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153.

In this diversity of citizenship insurance case, California law governs the substantive issues of state law. *American States Ins. Co. v. Borbor,* 826 F.2d 888, 890 (9th Cir.1987).

### III. *DISCUSSION*

As mentioned above, three Motions for Summary Judgment are presently before this Court. The Court will address each motion in turn, beginning with Defendant Allstate's Motion.

A. *Defendant Allstate Is Entitled To Summary Judgment Because No Triable Issue of Material Fact Demonstrates That Allstate Had A Duty To Defend Or To Indemnify Plaintiff Milagro Rivera*

Defendant Allstate argues that it had no duty under the **Policy's** Exclusionary Clause and **JointObligations** Provisions to defend or indemnify Milagro Rivera once the trial court convicted her husband, Mr. Rivera, of a criminal **act**. Upon a detailed review of the record and a close examination of the arguments presented by the parties, this Court agrees. As such, summary judgment in favor of Allstate is warranted.

*1.* By Its Express **Terms**, The **Policy** Does Not Create A Duty To Defend Or Indemnify Plaintiff Milagro Rivera Under The Facts Of This Case

It is clear that the facts of this case did not create within Allstate a duty to defend or indemnify Plaintiff Milagro Rivera. This conclusion is apparent when observing the express **terms** of the **Policy** at issue in light of controlling Ninth Circuit law.

First, it is important to point out that the **Policy** at issue contains an Exclusionary Clause that states that Allstate "do[es] do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal **acts** or omissions of, *any* insured **person**."(Emphasis added.) Therefore, by its express **terms**, the **Policy** does not cover the intentional or criminal **acts** of any insured **person**. In addition, the **Policy** contains a "**JointObligations** Provision," which states that "the **responsibilities**, **acts** and omissions of a **persondefined** as you or your will be **binding** upon any other **persondefined** as you or your."(Emphasis added). In other words, the **acts** or omissions of one insured designated as "you or your" may be automatically extended to all insured designated as "you or your." The **Policydefines** an insured as "you [the] **person** named in the declaration page as the insured and that **person's** resident spouse."

**\*4** In the present case, it is undisputed that the declaration page lists Mr. Rivera and Milagro Rivera as the named insureds of the **Policy**. In addition, it is uncontested that Mr. Rivera committed an intentional or criminal **act** when he shot Officer Donald Boon with an assault rifle, pled guilty to two counts of felony assault on a police officer pursuant to California Penal Code § 245(d)(3), and was convicted by the trial court. Due to Mr. Rivera's criminal conviction, Plaintiffs concede that the **Policy** excludes coverage for Mr. Rivera. Allstate therefore correctly argues that the exclusion of Mr. Rivera automatically triggers the exclusion of his wife Plaintiff Milagro Rivera under the **Policy's** definitions and **JointObligations** Provisions.

However, Plaintiffs argue that the **Policy** covers Plaintiff Milagro Rivera even in light of Mr. Rivera's criminal **act**. According to Plaintiffs, this is because Plaintiff Milagro Rivera's negligent **act** of failing to provide Officer Donald Boon with information about her husband's possession of a firearm and his violent mental and emotional condition was an independent negligent **act** that does not fall within the **JointObligations** Provision.[FN4]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05466-WHA   Document 18   Filed 01/03/2008   Page 8 of 20

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2003 WL 21664170 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

> FN4. To support Plaintiffs' contention that Plaintiff Milagro Rivera's negligence falls outside the **JointObligations** Provisions, Plaintiffs rely almost entirely on a previously decided civil suit brought in the Superior Court for the State of California for the County of Los Angeles. In that case, the state court found that Milagro Rivera's independent negligence proximately caused 49% of the Boons' injuries. However, the state court's finding has no bearing on this Court's ruling in light of the heavy weight of Ninth Circuit authority as discussed herein.

However, what Plaintiffs fail to address, and what the Ninth Circuit has carefully recognized, is that the intentional criminal act gives rise to the negligence claim, and not the reverse. In other words, without Mr. Rivera's intentional and criminal act of shooting Officer Donald Boon, Plaintiffs Donald and Crystal Boon would not have brought a negligence suit against Milagro Rivera. Indeed, the Boons' claim against Milagro Rivera for negligence resulted from her husband's intentional and criminal act.

The Ninth Circuit addressed this identical issue in the controlling case of *Allstate Ins. Co. v. Gilbert, 852 F.2d 449 (9th Cir.1988)*. In *Gilbert,* the Ninth Circuit interpreted the Exclusionary Clause and the Joint Obligations Provisions of a strikingly similar Allstate homeowner's insurance policy to preclude coverage for negligence claims against an insured that resulted from the intentional or criminal acts of another insured. *Allstate v. Gilbert, 852 F.2d 449, 450 (9th Cir.1988).* In *Gilbert,* the husband was convicted of sexually molesting a minor. *Id.* at 450. In the civil complaint, the parents of the minor child sued the wife, a named insured on the homeowner's insurance policy, for her negligence in failing to warn the parents of the minor child and to prevent the husband's acts of child molestation when the wife knew that her husband had such sexual inclinations. *Id.* In *Gilbert,* although the Exclusionary Clause of the homeowner's policy excluded coverage for the husband's intentional acts, Allstate agreed to defend the insured's wife under a reservation of rights. *Id.* at 451. The district court held, and the Ninth Circuit affirmed, that Allstate had no duty to defend or indemnify the wife against negligence claims, because the negligence claims against the wife resulted from the husband's excluded intentional or criminal act. *Id.* at 454.

**\*5** The *Gilbert* facts are highly analogous to the facts and issues presented here, where a defendant spouse is being sued for negligently failing to warn another of the other spouse's dangerous tendencies or unlawful inclinations. In addition, it appears that the *Gilbert* case and the instant matter deal with almost identical insurance policy provisions. As such, *Gilbert,* as controlling law, leads this Court to the conclusion that Allstate had no duty to indemnify or defend Milagro Rivera.FN5

> FN5. Plaintiffs also make a fleeting argument that Allstate was somehow required to defend Plaintiff Milagro Rivera because it initially prepared a defense for her. However, Plaintiffs' argument is contradictory to Ninth Circuit law.
> In the present matter, it is uncontested that Allstate agreed to defend Milagro Rivera in the State Civil Action against her and Mr. Rivera under a reservation of rights. To avoid the conflict of interest between Plaintiff Milagro Rivera and her husband in the State Civil Action, Allstate provided separate counsel for each of them, and defended Mr. Rivera in both the State Criminal Action and in the State Civil Action against both Riveras until the State Criminal Action against Mr. Rivera resulted in a conviction. After it became clear that Mr. Rivera's actions were "intentional or criminal acts" excluded under the Policy, and that the Policy precluded coverage for such acts, Allstate informed Mr. Rivera that it would cease providing him with a defense in 30 days. In addition, Allstate immediately informed Milagro Rivera that it might not be able to continue to provide a defense for her. However, Allstate did not

Case 3:07-cv-05466-WHA   Document 18   Filed 01/03/2008   Page 9 of 20

Not Reported in F.Supp.2d                                                                                           Page 6
Not Reported in F.Supp.2d, 2003 WL 21664170 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

withdraw its defense of Milagro Rivera immediately after Mr. Rivera was found to have engaged in a criminal act as was its right under the Policy and California law, but continued to represent her until the conclusion of the appeal. When the California Court of Appeal reversed the trial court's sustaining of the demurrer, and ordered the negligence claim against Milagro Rivera back to Superior Court to be adjudicated, Allstate informed her that it would no longer be providing a defense for her.

As a preliminary matter, this Court finds that Allstate's act of informing Milagro Rivera was proper, because an insurer who is defending under a reservation of rights, and who later determines there is no potential for coverage, may withdraw by notifying the insured that it will no longer furnish a defense in the action. *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 279, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). Moreover, it is well settled in California law that an insurer may "withdraw from defending a claim once it is able to demonstrate, by reference to undisputed facts, that the claim cannot be covered."*Ringler Assocs., Inc. v. Maryland Cas. Co.,* 80 Cal.App.4th 1165, 1186, 96 Cal.Rptr.2d 136 (2000). Here, Allstate provided coverage for Milagro Rivera until Mr. Rivera's criminal conviction conclusively determined that the Policy excluded the Riveras' claim for negligence. Once the trial court convicted Mr. Rivera, Allstate no longer had any duty towards the Riveras under the Policy and California law.

This Court also notes that Allstate cannot be expected to cover actions it explicitly and clearly excluded from the Policy. While "it is a well established principle of insurance law that exclusionary clauses in insurance policies are to be construed strictly against the insurer ... we may not, under the guise of strict construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid."*Gilbert* at 454 (quoting *Safeco Ins. Co. v. Gilstrap,* 141 Cal.App.3d 524, 533, 190 Cal.Rptr. 425 (1983)). Here, "Allstate explicitly exclude[d] coverage for criminal or intentional acts."*Castro v. Alistate Ins. Co.,* 855 F.Supp. 1152, 1154 (S.D.Cal.1994). Although Plaintiffs would have this Court believe otherwise, the Policy provisions expressly and clearly convey that the insured's liability is joint, and not several. Therefore, the criminal acts of one insured will exclude coverage for any insured. Thus, the criminal acts of Mr. Rivera precluded coverage for Milagro Rivera as his insured spouse.[FN6]

> [FN6.] Plaintiffs also contend that Milagro Rivera must be covered under the Policy as a "non-innocent co-insured." However, such an argument is unpersuasive, and made to circumvent Ninth Circuit law. Following *Gilbert,* the *Castro* Court ruled that "the criminal or intentional acts of an or any insured ... clearly exclude coverage for an innocent co-insured."*Castro v. Allstate Ins. Co.,* 855 F.Supp. 1152, 1154 (S.D.Cal.1994). Thus, it does not rationally follow that a "*non*-innocent co-insured" should be exempt from the Exclusionary Clause, when the "innocent co-insured" would be held to the clause. Such a result is not supported by case law or logic.

In light of the foregoing, this Court concludes that the Policy's coverage exclusion for "intentional or criminal" acts coupled with its Joint Obligations Provision decisively precludes coverage for Milagro Rivera under the facts of this case. Because no triable issue of fact exists to demonstrate that Defendant had a duty to defend or indemnify Milagro Rivera for negligence claims that resulted from the criminal act of Mr. Rivera, summary judgment in favor of Defendant Allstate is warranted.

Since this Court has determined that Defendant Allstate's has no duty to defend or indemnify Milagro Rivera, it follows that Allstate did not breach the contract, or the covenant of good faith and fair dealing, or engage in professional negligence, or vi-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05466-WHA   Document 18   Filed 01/03/2008   Page 10 of 20

Not Reported in F.Supp.2d                                                                                    Page 7
Not Reported in F.Supp.2d, 2003 WL 21664170 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

olate Cal. Ins.Code § 11580 in refusing to indemnify Milagro Rivera. Accordingly, this Court also grants summary judgment in favor of Allstate as to these remaining claims. In light of the foregoing, this Court concludes that Allstate is entitled to summary judgment in its entirety. As such, this Court need not reach the merits of the other two Motions for Summary Judgment currently before this Court.

### IV. *CONCLUSION*

In light of the foregoing, this Court:

(1) GRANTS Defendant Allstate's Motion for Summary Judgment;

(2) DENIES Plaintiff Milagro Rivera's Motion for Summary Judgment; and

(3) DENIES Plaintiffs Donald and Crystal Boon's Motion for Summary Judgment.

**\*6** IT IS SO ORDERED.

C.D.Cal.,2003.
Boon v. Allstate Ins. Co.
Not Reported in F.Supp.2d, 2003 WL 21664170 (C.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit 2

Not Reported in F.Supp.2d                                                                                              Page 1
Not Reported in F.Supp.2d, 2006 WL 3334936 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Allstate Ins. Co. v. Griffin
N.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.
ALLSTATE INSURANCE CO., Plaintiff,
v.
Timothy GRIFFIN and Melissa Moreland, Defendants.
No. C 05-0292 PVT.

Nov. 16, 2006.

Brandon M. Fish, Lejf E. Knutson, Paul Joseph O'Rourke, Jr., McCormick, Barstow, Sheppard, Wayte & Carruth LLP, Fresno, CA, for Plaintiff.
Allen H. Fleishman, Law Offices of Allen Fleishman, San Jose, CA, for Defendants.

**SECOND AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
PATRICIA V. TRUMBULL, Magistrate Judge.

**I. INTRODUCTION**

*1 This case involves an attack by Timothy Griffin ("Griffin") on Defendant Melissa Moreland ("Moreland").[FN1] At the time of the attack, Griffin was living with his parents and was covered as an insured under their Allstate Deluxe Plus Homeowners Policy ("Homeowners Policy") and a Personal Umbrella Policy ("PUP Policy") (jointly, the "Policies"), both issued by Plaintiff Allstate Casualty Insurance Company ("Allstate"). (Joint Stipulated Facts ("JSF") 1-2.) On or about March 18, 2003, Griffin attacked Moreland at a Denny's restaurant in San Jose. (JSF 3). Prior to the Moreland Attack, Moreland was sitting inside the restaurant with two friends when a man ran into the restaurant. *(Id.)* Approximately five minutes later, one of Moreland's friends left the table and was attacked inside the restaurant by Griffin, who picked her up and threw her into the dining counter. *(Id.)* As Moreland arose and approached her friend, Griffin picked up a steak knife and stabbed Moreland multiple times. *(Id.)* Griffin was charged with a violation of California Penal Code § 245(a), assault with a deadly weapon and assault by means likely to cause great bodily injury. (JSF 4.)

> FN1. The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

During the initial, guilt phase of Griffin's criminal trial, Griffin was found guilty of one count of violation of California Penal Code § 245(a). (JSF 5.) During the subsequent, sanity phase of the same trial, Griffin was found to have been insane at the time of the Moreland Attack pursuant to California Penal Code § 25(b). (JSF 5.) As a result, Griffin was conserved under California Welfare & Institutions Code Section 5000 as a gravely disabled person due to mental illness. Moreland then filed a civil complaint in Santa Clara County Superior Court (the "Moreland Action"). (JSF 6.) Allstate defended Griffin in the Moreland Action under a reservation of rights and the parties have settled the Moreland action. (JSF 7-8.) Allstate filed the present declaratory relief action to determine whether the policies cover Griffin's actions. The parties have agreed to a stipulated set of facts and to resolve the sole issue of whether the insurance policies cover the assault by cross motions for summary judgment.

The first set of cross motions for summary judgment were heard on July 26, 2005. Allstate claimed that the assault did not constitute an "occurrence" as defined under the policy, that the assault is precluded from coverage by the Allstate "Intentional/Criminal Act" exclusion, and that the statutory mandate of California Insurance Code section 533 also precludes coverage. Moreland claimed that Griffin was insane at the time of the attack, negating any intent or willfulness and rendering the attack a non-excluded occurrence. The court denied Allstate's Motion in its entirety and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05466-WHA     Document 18     Filed 01/03/2008     Page 13 of 20

Not Reported in F.Supp.2d                                                                                                  Page 2
Not Reported in F.Supp.2d, 2006 WL 3334936 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

denied Moreland's motion in part and granted the motion in part, finding that the criminal acts exclusion did not apply. The first order held that most of the issues turned on factual questions that were not resolved in the stipulated set of facts. The court found that the criminal finding that Griffin was insane did not resolve the issues because insanity "may" negate willfulness under California law, but does not necessarily do so. The court noted under California's two-prong insanity test, a person is deemed legally insane if he or she is 1) incapable of knowing or understanding the nature and quality of his or her act or 2) incapable of knowing or understanding that his or her act is wrong. *People v. Horn,* 158 Cal.App.3d 1014, 1027 (1984). Thus, the finding of insanity did not prove that Griffin did not intend his actions towards Moreland. Based on an expanded record, including details of the basis for finding Griffin insane, the parties again move for summary judgment.

***2** Allstate again claims that the assault did not constitute an "occurrence" as defined under the policy and that the assault is precluded from coverage by both the Allstate "Intentional/Criminal Act" exclusion and the statutory mandate of California Insurance Code section 533. Moreland claims that, at the time of the attack, Griffin neither understood the nature and quality of his actions nor that they were wrong and, therefore, did not intend his actions.

Based on the expanded record, the court finds that Griffin acted intentionally in that he understood that he was wielding a knife, that he was striking a person in the head with the knife, and that striking a person with a knife was likely to cause that person harm. Accordingly, the attack was not an occurrence under the policies; Allstate's motion for summary judgment is granted and Moreland's motion for summary judgment is denied.

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U .S. 317 (1986). The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324 (quoting Rule 56(e)). A "material" fact is one which might affect the outcome of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if a reasonable jury could return a verdict for the non-moving party. *Id.* In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party, and draw all justifiable inferences in its favor. *Id.* at 255.

## III. DISCUSSION

### A. Griffin's Mental State at the Time of the Attack

On November 13, 2003, Dr. Kline wrote a Psychological Evaluation for Judge Kevin Murphy, presiding judge at Griffin's criminal proceedings, regarding Griffin's mental state at the time of the incident with Moreland. ("Kline Report", JSF Exh. C.) Dr. Kline observed that Griffin displayed persecutory delusions and delusions of control. (Kline Report, p. 6.) On the day of the attack, Griffin believed that the initial victim that he chased was "Lucifer" and that he was commanded by God to attack Lucifer or face punishment. (Kline Report, p. 11.) However, during the Moreland Attack, Griffin knew he was attacking a person with a knife and that such an attack would cause injury. (Kline Rep. at 11; "Kline Supp. Rep." JSF, Ex. E at 2-3; and "Kline Depo." Knutson Decl. Exh. A. at 48:14-49:24, 50:19-51:7, 55:10-16.) Nonetheless, Dr. Kline concluded that "in this state of mind, it is highly unlikely that [Griffin] had the capacity to reflect on the consequences to the victim, as he was compelled by psychotic symptoms he experienced as a religious emergency to secure his own survival."(Kline Supp.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05466-WHA    Document 18    Filed 01/03/2008    Page 14 of 20

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2006 WL 3334936 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Report, JSF Exh. E., p. 2)

**\*3** Similarly, Dr. Harper, another expert appointed by the criminal court, opined that Griffin, in a severe delusional state, believed that the initial victim he attacked was actually Lucifer and that Lucifer and God were commanding Griffin to act. (Harper Report, JSF, Exh. F.) Dr. Harper also testified that Griffin was aware that he picked up a knife, that he stabbed someone with the knife, and that stabbing someone with a knife could produce bodily injury. (Harper Depo. Tr. at 46:14-15, Knutson Decl. Exh. B.) Dr. Harper opines that Griffin knew what he was doing, but could not control his behavior. (Harper Depo. Tr. at 47-48, Knutson Decl. Exh. B.). Based on this lack of control, Harper also testified at his deposition that Griffin never intended to stab anyone. (Harper Depo. Tr. at 69, Fleishman Dec., Exhibit K). Dr. Harper explained that although Griffin knew objectively that stabbing or choking someone could produce bodily harm, in that moment at Denny's, Griffin did not understand the aggressive nature of his actions; he was "operating without thought." (Harper Depo. Tr. at 69, Fleishman Dec., Exhibit K.) Harper concludes that, because he thought he was being attacked, Griffin thought his actions were defensive. Thus, Harper concludes Griffin did not understand the "nature" of his actions. (Harper Depo. Tr. at 47-48, Knutson Decl. Exh. B.)

### B. "Occurrence"

1. *The Policies and the Law Governing Interpretation*

The first step in analyzing a claim for coverage under an insurance policy is to determine whether the claim falls within the policy terms. *See Waller v. Truck Ins. Exchange, Inc., 11 Cal.4th 1, 16 (1995).* "[T]he burden is on the insured initially to prove that an event is a claim within the scope of the basic coverage." *Royal Globe Ins. Co. v. Whitaker, 181 Cal.App.3d 532, 536 (1986).* Thus, Moreland has the burden of proof to show that the Griffin's attack falls within the basic coverage of the Policies.

The Homeowners Policy provides coverage for "bodily injury or property damage arising from an occurrence."(JSF 9.) The PUP Policy provides for coverage of "bodily injury, personal injury or property damage" if such injury or damage "arise from a covered occurrence." (JSF 11.) In order for coverage to exist, Griffin's attack must be an occurrence within the meaning of the Policies. Both Policies define "occurrence" as follows: "Occurrence means an accident, including continuous or repeated exposure to substantially the same, general harmful conditions during the policy period, resulting in bodily injury or property damage."(JSF 10, 13.)

In its plain meaning, "accidental" means "arising from extrinsic causes, occurring unexpectedly or by chance or happening without intent or through carelessness." *St. Paul Fire & Marine Ins. Co. v. Superior Court, 161 Cal.App.3d 1199, 1202 (1984)*, *citing* Webster's Ninth New Collegiate Dict. (1983) p. 49. "An intentional act is not an 'accident' within the plain meaning of the word."*Royal Globe, 181 Cal.App.3d at 537* (footnote omitted)."An accident can flow from an intentional act only if 'some additional, unexpected, independent, and unforeseen happening occurs that produces the damage.' " *Quan v. Truck Ins. Exchange 67 Cal.App.4th 583, 600 (1998)* (citation omitted).

**\*4** Additionally, the term "accidental" refers to the insured's conduct, not his state of mind. *Collin v. Amer. Empire Ins. Co., 21 Cal.App. 4th 787, 804 (1994)*; *see also Merced Mutual Ins. Co. v. Mendez, 213 Cal.App.3d 41, 50 (1989)* (Where the insured intended all the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause the injury.")

There is no dispute that the attack, if committed by a sane person, would not constitute an occurrence. *See Jacobs v. Fire Ins. Exchange, 36 Cal.App.4th 1258, 1269 (1995)* (noting there would be no issue as to willfulness under § 533 if shooter were sane). Under California law, "legal insanity *may* negate a willful act," but does not automatically do so. *Jacobs,* Cal.App.4th at 1269 (referring to willfulness

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3334936 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Case 3:07-cv-05466-WHA   Document 18   Filed 01/03/2008   Page 15 of 20

Page 4

under § 533.). Even after additional briefing by the parties and additional independent research, the Court has found no case which sets forth a standard under California law for when insanity does and does not negate willfulness or intent.

2. *Interaction between Insanity and Occurrence*

As noted above, pursuant to California's two-prong insanity test, a person is deemed legally insane if he or she is 1) incapable of knowing or understanding the nature and quality of the act *or* 2) incapable of knowing or understanding that one's act is wrong. People v. Horn, 158 Cal.App.3d 1014, 1027 (1984). Moreland argues that Griffin did not know the nature and quality of his actions and, therefore, did not act intentionally. Allstate argues that Griffin understood the nature and quality of his actions because it is undisputed that he knew that he was striking a person with a knife and that such a strike was likely to cause harm.

This case is complicated by the fact both experts appointed by the court during Griffin's criminal trial find that Griffin knew he was attacking a human being with a steak knife and that it was likely to cause injury and also find that Griffin did not understand the "nature and quality" of his actions. In order to understand this apparent contradiction, it is necessary to delve more deeply into the experts' understanding of nature and quality.

Dr. Kline explained that nature is the understanding of the physical characteristics and actions, whereas "quality is about they understand the immediate consequences and the general meaning of their action."(Kline Depo. Tr., Fleishman Decl. Exh. E.) Kline's supplemental report reveals that he based his definition of "quality" on a book entitled "Conducting Insanity Evaluations" written by psychologist Richard Rogers and attorney Daniel Shuman. (Fleishman Decl. Exh. P. at 2) This book defines "quality" as contemplating "an acknowledgment of the harmfulness of the conduct (Davidson, 1965) and its potential or actual consequences for the victim."The book goes on to give an example that a woman trying to baptize the devil out of her baby might drown her baby without an awareness of the potential harmfulness of her actions. Kline asserts that Griffin is akin to the woman "baptizing" her baby. However, Griffin understood that the knife would hurt real people, whereas the woman in the example did not understand that she might drown her baby; she was unaware of the potential harmfulness. Thus, even under the definition cited by Dr. Kline, the court disagrees with Dr. Kline's conclusion that Griffin did not understand the "quality" of his actions.

**\*5** Dr. Harper candidly admitted that "I have always-have difficulty really understanding what quality means."(Harper Depo. Tr. at 19:8-13, Fleishman Decl. Exh. I.) Dr. Harper testified that Griffin did understand the nature of his actions. (Harper Depo. Tr. at 45-46, 54-55 Knutson Decl. Exh B.) However, Dr. Harper also asserted that Griffin did not understand the "aggressive nature" of his actions, and from that concludes that Griffin did not understand the "quality" of his actions. (*Id.* at 48.)Dr. Harper testified that a person who does not understand the quality of his actions when the action and the larger result they are expecting are inconsistent. (*Id.* at 44.)Thus, Dr. Harper found that Griffin did not understand the quality of his actions because he thought he had to defend himself against Lucifer.

The court disagrees with Dr. Harper's conclusion that, because Griffin thought he was justified in defending himself against Lucifer, he did not understand the quality of his actions. Because Griffin understood he was hurting real people, his mistaken belief that his actions were necessary to defend himself show only that Griffin did not understand that his actions were wrong, not that he did not appreciate the nature and quality of his actions. In People v. Skinner, 39 Cal.3d 765 (1985), the California Supreme Court found that the defendant "knew the nature and quality of his act. He knew that his act was homicidal."Skinner, 39 Cal.3d at 770. The court explained:
The expert testimony in this case supported the findings of the trial court that this defendant was aware of the **nature and quality** of his homicidal

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

act. He knew that he was committing an act of strangulation that would, and was intended to, kill a human being. He was not able to comprehend that the act was wrong because his mental illness caused him to believe that the act was not only morally justified but was expected of him. He believed that the homicide was "right."

Skinner, 39 Cal.3d at 778 (emphasis added); *see also* Jacobs, 36 Cal.App.4th at 1270 (Insured who understood he was shooting a gun, which would hurt a person, understood nature and consequences of his actions.) Similarly, Griffin knew the nature and quality of his actions; he knew that he was stabbing a knife into a person and that the knife would hurt the person. He was unable, however, to understand that his actions were not justified by his fear of Lucifer. The question of Griffin's motive, his fear of Lucifer or feeling of being commanded by god, is not relevant to his intent to act, only to wrongfulness of his actions. *See* J.C. Penney Casualty Ins. Co. v. M.K., 52 Cal.3d 1009, 1026 (1991) (In context of Section 533, Motive not relevant to intent, only to issue of wrongfulness).

Moreland argues that this court cannot second-guess the experts' conclusions that Griffin did not understand the nature and quality of his actions. However, this court is not bound by the criminal insanity standard. The question currently before the court is when a finding of insanity will cause an event to be an "accident" or occurrence, not the legal standard for criminal insanity. Thus, the criminal standard for insanity is "not necessarily controlling." Jacobs v. Fire Ins. Exchange, 36 Cal.App.4th 1258, 1282 (1995) (finding criminal standard instructive, but not controlling of whether irresistible impulse, negates willfulness under section 533.) Accordingly, the court is also not bound by the experts' potentially erroneous understanding of the criminal standard.[FN2]

> FN2. Dr. Harper was certainly confused as to the criminal standard for insanity as he testified that he thought both prongs of the M'Naughten test had to be met before a defendant could be found insane. (Harper Dep. Tr., Fleishman Decl. Exh. I,19:1-13). Indeed, it is possible that this mistake as to the legal standard might have influenced his finding that Griffin did not understand the nature of his actions. Moreover, Dr. Harper also stated that Griffin's failure to understand the aggressive nature applied to both quality and wrongfulness under M'Naughten. (Harper Depo. Tr. at 48:5-18, Knutson Decl. Exh B.) This raises the possibility that Dr. Harper conflated the two prongs of the insanity standard.

### 3. *Griffin's Attack Is Not An Occurrence*

**\*6** Griffin acted intentionally because he knew was sticking a knife in the head of a person who would likely be injured. Griffin's mistaken belief that his acts were justified does not transform his intentional conduct into an accident because he understood the physical consequences of his actions.

Moreland argues that National Mutual Fire Ins. Co. v. May, 860 F.2d 219 (6th Cir.1988), is similar to this case. Moreland argues that May, despite understanding that throwing a lit match on gasoline would start a fire, was found not to understand the physical nature of the consequences of his acts. Thus, Moreland argues that Griffin is like May, he understood he was picking up a knife but did not understand the consequences of his acts. *May* is not persuasive for two reasons. First, the same expert who testified that May "probably knew" that throwing a match in gasoline would start a fire, testified inconsistently that May did understand the physical consequences of his actions. The court found that the expert's inconsistent testimony, along with another opinion that May did not understand the consequences of his actions, sufficient to support the jury's verdict that May did not understand. Thus, the case does not stand for the proposition that a person who understands that a match will start a fire does not understand the consequences of his actions. Second, the evidence here is specific that Griffin understood that he would injure a person by striking that person with what he knew was a knife and there is no evidence to the contrary.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05466-WHA   Document 18   Filed 01/03/2008   Page 17 of 20

Not Reported in F.Supp.2d								Page 6
Not Reported in F.Supp.2d, 2006 WL 3334936 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Because Griffin understood that he was sticking a knife in the head of a human being and he understood that his actions would cause harm, the court finds that the attack on Moreland was not an accident and not an occurrence. To the extent that "nature and quality" are defined under California Criminal law to cover the situation where, as here, a defendant understands the concrete nature of his actions and their immediate physical consequences, the Court finds that such a definition should not be applied to civil insurance coverage disputes. California law holds that an occurrence requires an accident and excludes conduct that is intentional, even if the intent to harm is absent. When an insured stabs a person thinking it is a pumpkin, it is an accident because there is no intent to stab a person. However, when an insured stabs a person under the belief that the stabbing is justified, the stabbing is not an accident. When the belief in justification is mistaken, it is a tragedy, but not an accident.

### C. California Insurance Code Section 533

1. *Interpretation of Section 533*

California Insurance Code section 533 provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." Cal. Ins.Code § 533. In order to further the public policy of discouraging willful torts, Section 533 is deemed included in every contract of insurance; it is an implied exclusionary clause in the policy. J.C. Penney Cas. Ins. Co. v. M.K., 52 Cal.3d at 1019-21. Thus, as any exclusion, the burden is on Allstate to bring itself within the exclusion of liability under California Insurance Code 533. Clemmer v. Hartford Ins. Co., 22 Cal.3d 865, 879 (1979). However, Section 533 is subject to the rules of statutory construction, not the rule requiring strict interpretation of contracts against the insurer. Jacobs v. Fire Ins. Exch., 36 Cal.App. 4th 1258, 1269 (1995).

**\*7** For one to commit an intentional act under section 533, he or she must have 1) an intent to act and 2) either an intent to harm or an expectation that harm will result. Venture v. LMI Ins. Co., 66 Cal.App.4th 478, 501-502 (1998); Shell Oil Co. v. Winterthur Swiss Ins. Co., 12 Cal.App.4th 715, 742 (1993) (Reckless conduct, where the actor should but does not appreciate the likely harm, is not sufficient.). When the insured's mental capacity is at issue, the first prong, the intent to commit the wrongful act, can be shown by a preconceived design to inflict injury. Reagen's Vacuum Truck Service, Inc. v. Beaver Ins. Co., 31 Cal.App.4th 375, 388 (1994). Similarly, the first prong can be disproven by proof that a motive, such as self-defense, justifies the actions taken. J.C. Penney Casualty Insurance Company v. M.K 52 Cal.3d at 1023.[FN3] Additionally, the second prong, intent to harm or knowledge of probability of harm, need not be proven in certain situations where harm is inherent in the act. J.C. Penney, 52 Cal.3d at 1025 (sexual molestation of child inherently harmful).[FN4] Finally, willfulness cannot be disproved by arguing that the action is the result of an irresistible impulse. Jacobs, 36 Cal.App.4th at 1287 (adopting criminal law's rejection of irresistible impulse based on lack of reliability).

> [FN3.] In *Clemmer,* the court appeared to require a preconceived intent to injure in order to find a willful act. Later cases have clarified that an intent to injure is not a requirement for willfulness, but rather a way to prove intent when there is a question as to whether the insured had the mental capacity to intend to act. J.C. Penney Casualty Ins. Co. v. M.K. 52 Cal.3d 1009, 1023-1025 (1991).
>
> [FN4.] The *J.C. Penney* court was careful to limit its holding to child molestation. However, other courts have found a variety of other acts inherently harmful. *See* Venture v. LMI Ins. Co., 66 Cal.App.4th 478, 502 (1998) (collecting cases finding various acts inherently harmful).

2. *Collateral Estoppel Does Not Apply*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05466-WHA   Document 18   Filed 01/03/2008   Page 18 of 20

Not Reported in F.Supp.2d                                                                                                    Page 7
Not Reported in F.Supp.2d, 2006 WL 3334936 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Allstate argues that the criminal conviction for assault with a deadly weapon, standing alone, is sufficient to determine that Griffin's actions were wilful because the issue was necessarily decided in the criminal action. Thus, Allstate argues that Moreland is collaterally estopped from asserting that the acts were not willful.

[A] party will be collaterally estopped from relitigating an issue only if (1) the issue decided in a prior adjudication is identical with that presented in the action in question; and (2) there was a final judgment on the merits; and (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication.

Clemmer, 22 Cal.3d at 874. In this case, collateral estoppel does not apply for two reasons. First, the identical issue of intent was not necessarily decided in the criminal proceeding because assault with a deadly weapon is a general intent crime and does not require an intent to injure or any finding of understanding the likelihood of injury. Allstate v. Overton, 160 Cal.App.3d 843, 849-50 (1984); People v. Rocha, 3 Cal.3 893, 899 (1971). Allstate cites Rocha for the proposition that assault with a deadly weapon requires an intent to injure someone. Rocha clearly states the opposite:

We conclude that the criminal intent which is required for assault with a deadly weapon ... is the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another.... The intent to cause any particular injury to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary.

**\*8** *Rocha,* 3 Cal.3d at 898-99 (citations and footnotes omitted.) Thus, the second prong of section 533, intent to harm or expectation of harm, is not proven by the conviction for assault.

Second, although Moreland's right to proceeds of the insurance contract is dependent on Griffin's rights, Moreland and Griffin are not in privity in this situation. Griffin did not adequately represent Moreland's interests at the criminal trial. The record reflects that Griffin did not actively contest the finding at the trial that he was guilty of assault. Thus, collateral estoppel does not prevent Moreland from arguing that Griffin's actions were not wilful.*Clemmer,* 22 Cal.3d at 874-877.

### 3. *The Attack Was Not Inherently Harmful Because of Griffin's Insanity*

Allstate also argues that it does not have to prove that Griffin had the specific intent to cause injuries because an attack is inherently harmful.*Fire Insurance Exchange v. Altieri,* 235 Cal.App.3d 1352 (1991). As this court has already held, *Altieri* is inapposite because there was no issue of insanity in that case. As the *Jacobs* court noted, "evidence of intent to perform an inherently harmful and inherently wrongful act without justification suffices to trigger section 533, *unless insanity is in issue.*" *Jacobs,* 36 Cal.App.4th at 1278 (emphasis added.)

### 4. *Griffin's Acts Were Willful Under Section 533*

Allstate argues that Griffin intended the acts that led to Moreland's injuries. Moreland argues that Griffin's delusions prevented him from understanding what he was doing. However, as discussed above, Griffin knew he had picked up a knife, that he was striking a person (Moreland) with that knife. Moreover, Griffin expected that the knife strike was likely to harm the person struck. Accordingly, Griffin intended the conduct that harmed Moreland and expected an injury to result. Therefore, Griffin's conduct was willful within the meaning of section 533 and there can be no coverage for the attack.

### D. The "Intentional/Criminal Act" Exclusion

Allstate argues that coverage is precluded by the Intentional/Criminal Act exclusion of the Policies. The relevant Allstate Policies state:

We do not cover any bodily injury or property damage intended by, or which may *reasonably be expected* to result from the *intentional or criminal acts* or omissions of any insured person. This exclusion applies even if (a) such an insured person lacks the mental capacity to govern his or her conduct.... This exclusion applies regardless of whether or not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05466-WHA    Document 18    Filed 01/03/2008    Page 19 of 20

Not Reported in F.Supp.2d                                                                                               Page 8
Not Reported in F.Supp.2d, 2006 WL 3334936 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

such insured person is actually charged with or convicted of a crime.

(JSF 9, 12) (Emphasis added).

1. *Lack of Capacity to Control Conduct Is Not Sufficient*

Allstate first argues that the exclusion's statement that it applies even if the insured person lacks the mental capacity to govern his or her conduct is determinative. This argument is not persuasive because the exclusion only applies to intentional acts. Thus, the first question is whether the act was intentional. That the exclusion applies even if the insured could not govern his or her conduct does not answer the initial question of whether the act was intentional. In order to exclude the acts of a person under an irresistible impulse, the insurance company must first show that the person understood the nature and quality of his acts. Once the initial showing is made, the insured cannot avoid the exclusion by arguing an irresistible impulse.

2. *Griffin's Attack Is Excluded As An Intentional Act*

**\*9** Moreland argues that the relevant intent is the subjective intent of the insured and that Griffin did not intend to injure Moreland. Thus, Moreland argues that the intentional acts exclusion does not apply. While the subjective intent of the insured governs the determination of whether an event constitutes a covered occurrence, it does not follow that the same intent governs all intentional acts exclusionary clauses, regardless of the wording of the clause. By its language, this clause refers to an objective standard by referencing damage that could "reasonably be expected." See *Scott v. Allstate Indem. Co.,* 417 F.Supp.2d 929 (N.D.Ohio 2006) ("The phrase 'which may reasonably be expected to result' denotes an objective as opposed to subjective standard of coverage rendering an insured's subjective intent to cause damage irrelevant."). Moreover, assuming, *arguendo,* that subjective intent governed, the attack would still be excluded because Griffin knowingly struck Moreland and subjectively expected that when he struck Moreland with a knife that it would injure her. Thus, under either a subjective or objective test, Griffin performed an intentional act.

3. *Griffin's Attack Was Not a Criminal Act*

In the prior order, the court held that Griffin did not commit a criminal act because he was found "not guilty by reason of insanity ." *People v. Drew,* 22 Cal.3d 333, 344 (1978) (California courts treat a judgment after a finding of insanity as an acquittal.); *Ebberts v. State Bd. of Control of Cal.,* 84 Cal.App.3d 329, 334 (1978) (A crime is not committed when plaintiff was found not guilty by reason of insanity.); *see also People v. Phillips* 83 Cal.App. 4th 170, 173 (2000) ("California law exempts from criminal responsibility ... the insane.").

Allstate urges the court to reconsider, arguing that the court erroneously relied upon pre-1982 cases to find that insanity negates the crime. Allstate asserts that in 1982 California changed the penal code and removed insane people from the list in Section 26 of people who are incapable of committing crimes. Allstate then notes that Penal Code Section 28 was amended at the same time to state:
Evidence of mental disease, mental defect, or mental disorder shall not be admitted to show or negate the capacity to form any mental state, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act.

Cal.Penal Code § 28(a). Allstate argues that these two amendments show that, since 1982, the insane can form criminal intent and can be held criminally liable.

Allstate misreads the criminal code. First, Section 28(a) does not abolish insanity as a defense, it eliminated the diminished capacity defense and requires a defendant to show the actual lack of intent as opposed to the general lack of capacity to form the required intent. Section 28(a) continues:
Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent, premeditated, deliberated, or

Case 3:07-cv-05466-WHA   Document 18   Filed 01/03/2008   Page 20 of 20

Not Reported in F.Supp.2d                                                                                         Page 9
Not Reported in F.Supp.2d, 2006 WL 3334936 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

harbored malice aforethought, when a specific intent crime is charged.

**\*10** *Id.* At the same time that the insane were removed from the list of people who cannot commit a crime, section 15 was amended to provide:(a) The defense of diminished capacity is hereby abolished. In a criminal action, as well as any juvenile court proceeding, evidence concerning an accused person's intoxication, trauma, mental illness, disease, or defect shall not be admissible to show or negate *capacity to form* the particular purpose, intent, motive, malice aforethought, knowledge, or other mental state required for the commission of the crime charged.
(b) In any criminal proceeding, including any juvenile court proceeding, in which a plea of *not guilty by reason of insanity* is entered, this defense shall be found by the trier of fact only when the accused person proves by a preponderance of the evidence that he or she was incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong at the time of the commission of the offense.

Cal.Penal Code § 25(a)(b) (emphasis added.). Thus, the criminal code now provides that people with mental incapacities can be found to have committed a crime, but defendants who prove they lacked the ability to understand the nature and quality of their acts or to understand that their actions were wrong, have not committed a crime.

Moreover, penal code section 15 defines a crime as: "an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, the punishment of death, or imprisonment, or fine, or removal from office, or disqualification to hold an office of honor or trust or profit in this State."Cal.Penal Code § 15. In this case, Griffin was not punished in any of the enumerated means-he was conserved under California Welfare and Institutions Code § 5000 as a gravely disabled person due to mental illness. Because he was not punished in one of the ways that defines a crime, no crime was committed. Accordingly, the legislature did not intend to hold the insane guilty of a crime and a crime has not been committed when the person is found not guilty by reason of insanity.

### IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:
1. Plaintiff's Motion for Summary Judgment is Granted; and
2. Defendant's Motion for Summary Judgment is Denied

IT IS SO ORDERED.

N.D.Cal.,2006.
Allstate Ins. Co. v. Griffin
Not Reported in F.Supp.2d, 2006 WL 3334936 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.