RALPH A. LOMBARDI, State Bar No. 048217
ral@llcllp.com
LORI A. SEBRANSKY, State Bar No. 125211
las@llcllp.com
LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541
Telephone:    (510) 433-2600
Facsimile:     (510) 433-2699

Attorneys for Defendants
MALCOLM M. SYNIGAL, SR. and ANGELA M. SYNIGAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| METROPOLITAN DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, a Rhode Island Corporation,<br><br>Plaintiff,<br><br>v.<br><br>MALCOLM M. SYNIGAL, SR., an individual, and ANGELA M. SYNIGAL, an individual, and DANITA KING, an individual,<br><br>Defendants. | Case No.  C-07-5466 JL<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THIS DECLARATORY RELIEF ACTION**<br><br>Date:       January 24, 2008<br>Time:       8:00 a.m.<br>Judge:      The Honorable William Alsup<br>Courtroom: 9 |

## INTRODUCTION

Metropolitan does not dispute that federal courts should refrain from exercising declaratory relief jurisdiction when the coverage determination depends on factual issues already encompassed in a pending state court liability action against the insured.  Instead, Metropolitan argues that such abstention is unnecessary here, since coverage can be determined without regard to those (or any other) facts.  Metropolitan's premise hinges on its repeated supposition that "Marlin intentionally bludgeoned and strangled Ms. Brown." (Opposition at 12:8-9; *also see*, Opposition at 1:16-17; 2:3-4; 7:25-26; 12:7-9; 14:20-21.)  Because Marlin's intent is "undisputed," argues Metropolitan, the outcome of the underlying tort and criminal actions is

irrelevant.

But Marlin's intent is not "undisputed." In fact, Marlin's "intent" has never been determined at all. There is no evidence of how Ms. King died or what Marlin actually did, let alone what he thought he was doing, or what he understood was happening. Evidence of Marlin's mental state is crucial to determining coverage, since his mental incapacity could negate both his ability to commit a crime (eviscerating the "criminal acts" exclusion) and his ability to act intentionally. These questions will necessarily be decided in the underlying state court proceedings. It would be highly prejudicial to require the Synigals to litigate those same issues here. Metropolitan's declaratory relief suit is premature.

### I. THE QUESTION OF WHETHER MARLIN ACTED INTENTIONALLY IS IMPORTANT FOR COVERAGE PURPOSES, AND WILL BE LITIGATED IN THE PENDING TORT ACTION

Metropolitan asks this Court to determine as a matter of law that Marlin's conduct was intentional, and so did not constitute an "occurrence" under the policy. While the question of whether Ms. King's death was caused by an "occurrence" is a legitimate question, it is one which cannot be answered based only on the allegations of the underlying criminal and civil complaints[1] – or on Metropolitan's self-serving conclusions about Marlin's "intent." It requires factual information that will be discovered in the underlying civil suit in the course of adjudicating Danita King's claims that Marlin either intentionally killed her daughter or "negligently accosted" her, causing her death.[2]

First, there is no evidence at this point of what Marlin actually *did*, or of the circumstances leading up to the alleged assault. Metropolitan makes various assumptions about what happened

---

[1] As mentioned in our moving papers, insurers cannot avoid a duty to defend based solely on allegations of intentional, willful or malicious conduct. *See, e.g., Sachs v. St. Paul Fire & Marine Ins. Co.*, *supra,* 303 F. Supp. at 1340-1341 [insurer had duty to defend in spite of dishonest acts exclusion and allegations of malicious conduct]; *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 (1966) [insurer required to defend allegations of willful, malicious and intentional assault]; *Montrose Chemical Corp. v. Sup. Court, supra,* 6 Cal. 4th at 304-305 [until it was determined whether Montrose acted negligently (covered) or intentionally (not covered), there was a potential for coverage and insurer had duty to defend].

[2] "Accost" means to "approach or speak to often in a challenging or aggressive way." Webster's Ninth New Collegiate Dictionary, 1988, p. 50.

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612-3541

throughout its brief, but all are unsupported, even by the underlying complaints. It would seem impossible for this Court to determine that Marlin acted intentionally when his actions (and the circumstances surrounding them) have not been established.

Second, even *if* Marlin attacked Ms. King in the manner Metropolitan supposes, it would not necessarily mean his (alleged) conduct was intentional for coverage purposes. That is because under California law, an insured's conduct will not be deemed an "intentional act" if the insured is "*either* volitionally impaired so that he cannot control his actions even though he knows what he is doing, or cognitively impaired so that he cannot understand the nature of his acts or that they will cause injury." *Congregation of Rodef Sholom of Marin v. American Motorists Ins. Co.*, 91 Cal. App. 3d 690, 697-698 (1979), disapproved on other grounds by *JC Penney Cas. Ins. Co. v. M.K.*, 52 Cal. 3d 1009, 1020 (1991). *Also see, Clemmer v. Hartford Ins. Co.,* 22 Cal. 3d 865 (1978) [there can be no "willful conduct" under Calif. Ins. Code section 533 if insured suffering from diminished capacity]; *Ruvolo v. American Casualty Co.,* 39 N.J. 490 (1963) [insured shot business partner multiple times; conduct could not be treated as intentional where insured "was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason, and while in that condition [acted] on an irrational impulse…"].[3]

The relevance of the insured's mental state was examined in the *Griffin* case, which Metropolitan cites.[4] In *Griffin*, the insured attacked and stabbed a diner while she was sitting in a restaurant. Criminal charges were filed, and the insured was convicted of violating Penal Code section 245(a) [assault with a deadly weapon]. He was, however, found to have been insane at the time of the attack. The victim subsequently filed a civil suit against the insured (Griffin), which Allstate agreed to defend under a reservation of rights. After settling the civil action, Allstate filed a federal declaratory relief suit, asking the court to determine that coverage did not apply because (among other things) the attack was a deliberate act that could not be an

---

[3] *Ruvolo* is a seminal case in this area, and was cited with approval by the First District Court of Appeal in *Congregation of Rodef Sholom, supra,* 91 Cal. App. 3d at 696.

[4] *Griffin v. Allstate Ins. Co.*, 2006 WL 3334936 (N.D. Cal.), attached as Ex. 2 to Metropolitan's Notice of Lodgement.

30788-37422 LAS 547962.1      - 3 -      REPLY IN SUPPORT OF MOTION TO DISMISS OR STAY C-07-5466 WHA

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612-3541

"occurrence," and because coverage was precluded by the "Intentional/Criminal Act" exclusion. (*Griffin* at p. 12 of Metropolitan's Notice.)

The Court denied the parties' original motions for summary judgment because the factual record lacked any evidence about the insured's mental state, which the Court deemed necessary to determine whether his conduct was intentional or was an "occurrence." *See, Griffin v. Allstate Ins. Co.*, 2005 WL 2122053 (N.D. Cal.). Allstate contended that such information was unnecessary because an attack is always a purposeful act that can never be an accident (or "occurrence"). The Court explained that while mental state might be irrelevant for mentally competent people, "Griffin's status as legally insane…means that he might not have been capable of purposeful deliberate conduct." *Griffin v. Allstate Ins. Co.*, 2005 WL 2122053 at p. 3. For example, "when an insured stabs a person thinking it is a pumpkin, it is an accident because there is no intent to stab a person." *Griffin v. Allstate Ins. Co.*, 2006 WL 3334936 at p. 17 of Metropolitan's Notice.

In the end, the *Griffin* court concluded that the insured's conduct was intentional (and not an "occurrence"), because the expanded evidentiary record included expert testimony that proved Griffin "knew he was sticking a knife in the head of a person" and "understood that he would injure" that person by doing so. *Griffin v. Allstate Ins. Co.*, 2006 WL 3334936 at p. 16 of Metropolitan's Notice. But until such evidence was adduced, the Court was unable to determine how the policy applied.[5]

None of Metropolitan's other arguments mandates a conclusion that coverage can be determined as a matter of law, without regard to the underlying facts, such that declaratory relief jurisdiction should be exercised. For instance:

---

[5] Other courts around the country have similarly refrained from determining the extent of the insurer's duty when the mental state of the insured is undetermined. *See, e.g., American National Fire Insurance Company v. Cordie*, 478 N.W.2d 531 (Minn.Ct.App.1991) [intentional act exclusion did not apply when the insured's mental illness or defect prevented him from knowing the wrongfulness of his conduct and controlling himself]; *Aetna Cas. & Sur. Co. v. Dichtl*, 78 Ill.App.3d 970 (1979) [whether the insured's mental capacity prevented her conduct from falling within an intentional conduct exclusion was a question of fact]; *Preston v. Granger*, 517 So.2d 1125 (La.App.1987) [insane individual may not be capable of committing an intentional act as defined by an insurance policy exclusion]; *State Farm Fire & Cas. v. Morgan*, 258 Ga. 276 (1988); *Rajspic v. Nationwide Mutual Insurance Co.*, 110 Idaho 729 (1986).

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612-3541

- It is inappropriate to dismiss as "preposterous" any potential defenses to the underlying criminal and civil claims simply because Metropolitan characterizes Marlin's conduct as intentional and deliberate, or because those defenses are not raised in the criminal or civil complaints. (Opposition at 2:24-28 (fn. 3) and 12:10-13.) The complaints were filed by the claimants, and would not typically allege facts designed to exonerate the defendant from liability.

- There is no practical advantage to allowing this declaratory relief suit to proceed, since even summary judgment would have to wait for factual information to be developed in the underlying action(s). (Opposition at 8:4-8.) And as indicated in our moving papers, Marlin's mental incompetence limits the discovery that could be undertaken.

- Staying or dismissing this action would not mean that declaratory relief never is available to an insurer when an underlying liability suit is pending. (Opposition at 8:13-16.) Prosecution of a parallel insurance action is inappropriate only where, as here, coverage depends on factual or legal issues that are being discovered and litigated in the liability action.

If the absence of coverage could be readily determined with nothing more than the underlying complaints in hand, there would have been no reason for Metropolitan to assume the insured's defense. Obviously the circumstances as pled present at least a potential for coverage under the policy, or Metropolitan would have declined the insured's tender outright.

**II. THIS COURT CANNOT DECLARE THAT THE "CRIMINAL ACTS" EXCLUSION APPLIES BEFORE IT HAS BEEN DETERMINED THAT MARLIN COMMITTED A CRIME**

Metropolitan asks this Court to decide that it has no duty to defend or indemnify the Synigals in respect of the underlying negligence and intentional tort claims because coverage is necessarily excluded by the "criminal acts" exclusion. There are two reasons this exclusion cannot be applied until the criminal action is resolved.

First, the exclusion will be triggered only if the insured has actually committed a criminal act. That is why the cases cited by Metropolitan have applied this exclusion only when the

insured <u>already has been convicted</u> of a crime. *See, e.g., Castro v. Allstate Ins. Co.*, 855 F. Supp. 1152 (1994) [exclusion applied based on prior conviction for first degree murder]; *Allstate Ins. Co. v. Gillette*, 852 F. 2d 449 (9th Cir. 1998) [prior conviction for sexual molestation]; *Farmer v. Allstate Ins. Co.*, 311 F. Supp. 884 (CD Cal. 2004) [prior conviction for sexual molestation]; *Boon v. Allstate Ins. Co.*, 2003 WL 21664170 (CD Cal.) [prior conviction for felony assault on a police officer].[6]

Second, even if it were proved that Marlin killed Ms. King, he might never be convicted of a crime. Under California law a crime has not been committed when the person is found not guilty by reason of insanity. *People v. Drew*, 22 Cal. 3d 333, 344 (1978) [a judgment after finding of insanity is treated as an acquittal]; *Ebberts v. State Bd. Of Control of Calif.*, 84 Cal. App. 3d 329, 334 (1978) [crime not committed when plaintiff found not guilty by reason of insanity]. So if Marlin were found not guilty by reason of insanity, a "criminal act" would not have occurred for purposes of the policy exclusion. *Griffin v. Allstate Ins. Co.*, 2006 WL 3334936 (N.D. Cal.), attached as Ex. 2 to Metropolitan's Notice of Lodgement, at pp. 19-20 [insured who stabbed victim multiple times deemed "insane" at criminal trial, so criminal act exclusion did not apply].

Metropolitan cites a Hawaii case for the contrary proposition that the "mental capacity" language in the criminal acts exclusion allows the court to apply the exclusion even if Marlin were deemed insane. *Allstate Ins. Co. v. Davis*, 430 F. Supp. 2d 1112 (D. Haw. 2006). But *Davis* is not persuasive. First, even in *Davis* the exclusion was applied based on a <u>prior criminal conviction.</u> Second, *Davis* contradicts *Griffin*. The criminal acts exclusion considered in *Griffin* also included language stating the exclusion would apply if the insured lacked the mental capacity to govern his conduct. Yet the *Griffin* court held the insane insured's conduct was not a "criminal act" under California law, and so the exclusion would not apply. *Griffin v. Allstate Ins. Co.*, 2006 WL 3334936 at p. 18-20 of Metropolitan's Notice.

Finally, we submit the criminal acts exclusion in Metropolitan's policy is ambiguous

---

[6] *Boon* is an unreported opinion, attached to Metropolitan's Notice of Lodgment as Ex. 1. In that case, Allstate did not deny its duty to defend or indemnify its insured until *after* the criminal conviction was rendered.

1  when interpreted in accordance with California law.  The policy on its face excludes "criminal

2  acts" committed by the insured, even if the insured is insane, but under California law the acts

3  committed by an insane person are not criminal.  Ambiguous exclusions are construed in favor of

4  the insured.  *Bank of the West v. Sup. Ct*., 2 Cal. 4th 1254, 1265 (1992).

### III. THE "JOINT OBLIGATION" PROVISION OF THE POLICY CANNOT BE APPLIED TO ELIMINATE COVERAGE FOR MARLIN'S PARENTS UNLESS THE COURT DETERMINES THAT MARLIN'S CONDUCT IS NOT COVERED

8  Metropolitan relies on the "joint obligation" provision of its policy to argue that all

9  negligence claims against Mr. and Mrs. Synigal are automatically excluded and therefore

10  irrelevant. (Opposition at p. 9.)  In other words, Metropolitan urges that if Marlin's conduct was

11  intentional or criminal, and therefore not covered, then none of the claims asserted against his

12  parents would be covered, either.

13  Again, Metropolitan puts the cart before the horse.  Since coverage for Marlin cannot be

14  determined without evidence adduced in the criminal and civil suits, the negligence claims

15  continue to present a relevant potential for coverage under the policy.  If the policy ultimately

16  were deemed to cover Marlin's conduct, then the joint obligations language would be moot, and

17  coverage would exist for his parents, as well.

18  Moreover, all of the "joint obligation" cases Metropolitan cites deny coverage to innocent

19  co-insureds under the "joint obligations" provision based on the insured's <u>prior criminal

20  conviction</u>.  *See,* Opposition at 9:10-20, citing *Castro v. Allstate Ins. Co.*, 855 F. Supp. 1152

21  (1994) [prior conviction for first degree murder]; *Farmer v. Allstate Ins. Co.*, 311 F. Supp. 884

22  (CD Cal. 2004) [prior conviction for sexual molestation]; and *Boon v. Allstate Ins. Co.*, 2003 WL

23  21664170 (CD Cal.) [prior conviction for felony assault on a police officer].  Marlin has not been

24  convicted of any criminal conduct here.

### IV. FINALLY, PROCEEDING WITH THIS DECLARATORY RELIEF ACTION WOULD SEVERELY PREJUDICE METROPOLITAN'S INSUREDS

27  Metropolitan contends prosecution of this declaratory relief action will not prejudice its

28  insureds' defense in the underlying civil or criminal actions, or subject Marlin to collateral

**LOMBARDI, LOPER & CONANT, LLP**
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612-3541

30788-37422 LAS 547962.1

- 7 -

REPLY IN SUPPORT OF MOTION TO DISMISS OR STAY C-07-5466 WHA

estoppel, because Metropolitan did not include Marlin as a party to this action. (Opposition at 10:11-12.)

Metropolitan cannot shield its conduct by such procedural machinations. The entire purpose of Metropolitan's declaratory relief suit is to negate coverage for *all* of its insureds, including Marlin's parents (who are defendants), based upon *Marlin's* allegedly intentional and criminal conduct. To prove its coverage position, then, Metropolitan will have to introduce evidence that Marlin -- its own insured -- committed a crime (murder), or that he purposefully and deliberately killed Ms. King. In doing so, Metropolitan will be making the case against Marlin that the State would be making in the criminal action, and that Ms. King would be making against marlin and his parents in the civil action. To add to this absurdity, Metropolitan would be prosecuting these claims against its insureds at the same time it is defending against those same claims in the civil suit. Metropolitan's attack against its own insureds is patently prejudicial.

Finally, even though Marlin was not joined as a party to this action, he almost certainly would be bound by whatever overlapping factual determinations are made. Collateral estoppel applies not only to parties to an action, but also to persons in privity with parties (like his parents), whose interests are identical to Marlin's. *Clemmer v. Hartford Ins. Co., supra,* 22 Cal. 3d at 874-875.

Metropolitan's attempt to pursue this litigation against its insureds is wrong. For all these reasons, defendants respectfully submit this Court should abstain from exercising declaratory relief jurisdiction.

Dated: January 10, 2008

LOMBARDI, LOPER & CONANT, LLP

By: /s/ Lori A. Sebransky
LORI A. SEBRANSKY
Attorneys for Defendants
MALCOLM M. SYNIGAL, SR. and
ANGELA M. SYNIGAL