Jeffrey A. Charlston (SBN 065427)
Stephen P. Soskin (SBN 101389)
Thomas S. Flynn (SBN 194231)
**CHARLSTON, REVICH & CHAMBERLIN LLP**
1925 Century Park East, Suite 1250
Los Angeles, California 90067-2746
Telephone: (310) 551-7000
Facsimile: (310) 203-9321

Attorneys for Plaintiff Metropolitan Direct
Property and Casualty Insurance Company

Ralph A. Lombardi (SBN 048217)
Lori A. Sebransky (SBN 125211)
**LOMBARDI, LOPER & CONANT, LLP**
Lake Merritt Plaza
1999 Harrison St., Suite 2600
Oakland, California 94612-3541
Telephone: (510) 433-2600
Facsimile: (510) 433-2699

Attorneys for Defendants Malcolm M. Synigal, Sr.
and Angela M. Synigal

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| METROPOLITAN DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, a Rhode Island Corporation,<br><br>   Plaintiff,<br><br>v.<br><br>MALCOLM M. SYNIGAL, SR., an individual, and ANGELA M. SYNIGAL, an individual, and DANITA KING, an individual,<br><br>   Defendants. | CASE NO.:  C 07-05466 WHA<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT OF PLAINTIFF METROPOLITAN AND DEFENDANTS MALCOLM AND ANGELA SYNIGAL** |

Plaintiff Metropolitan Direct Property and Casualty Insurance Company ("Metropolitan") and defendants Malcolm and Angela Synigal (the "Synigals") hereby file this Joint Case Management Conference Statement pursuant to Local Rule 16-9(a) and the Standing Order re Contents of Joint Case Management Statement, for consideration during the January 24, 2008, Case Management Conference.

1. **JURISDICTION AND SERVICE**

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

Pursuant to 28 U.S.C. § 1391(1), venue is appropriate in the San Francisco or Oakland Division of the Northern District of California because jurisdiction is founded upon diversity of citizenship, and the defendants reside in Contra Costa County, which is within the San Francisco or Oakland Division of the Northern District of California.

Metropolitan and the Synigals agree that there is no issue regarding personal jurisdiction or venue.

Metropolitan has served all defendants in this action.

2. **FACTS**

   A)  **Metropolitan's Assertions of Fact**

   i)  **The Metropolitan Policy**

This declaratory relief action centers on a homeowners policy Metropolitan issued to the Synigals. The policy number is 8993590640, and the policy was effective February 1, 2006 to February 1, 2007 (the "Policy"). The Policy covered the Synigals' then-seventeen-year-old son, Marlin, as an insured. Marlin is not a party to this action. The Policy contained the following pertinent provisions:

> The terms of this policy impose joint obligations on all persons defined as "**you**". This means that the responsibilities, acts and failures to act of a person defined as "**you**" will be binding upon another person defined as "**you**". . . .
>
> **We** will pay all sums for **bodily injury** . . . to others for which the law holds **you** responsible because of an **occurrence**. . . .
>
> "**BODILY INJURY**" means any bodily harm, sickness or disease. This term includes required care, loss of services and death if it is a result of such bodily injury, sickness or disease.

> "**OCCURRENCE**" means an accident, including continuous or repeated exposure to substantially the same harmful conditions, resulting in **bodily injury** . . . during the term of the policy.
>
> "**YOU**" and "**YOUR**" mean:
>
> 1.    the person or persons named in the Declarations and if a resident of the same household:
>
>    A.    the spouse of such person or persons;
>
>    B.    the relatives of either;
>
>    C.    any other person under the age of twenty-one and, in the care of any of the above.
>
> **UNDER COVERAGE F - PERSONAL LIABILITY . . . WE DO NOT COVER**
>
> 1.    **bodily injury** . . . which is reasonably expected or intended by you or which is the result of your intentional and criminal acts. This exclusion is applicable *even if you lack the mental capacity, for whatever reason, to govern your conduct.*

(Italics added.)

### ii)    Marlin Kills Nadawn Brown and Is Charged with Murder

On March 22, 2006, Marlin killed Nadawn Brown, the fourteen-year-old daughter of defendant Danita King. Marlin was arrested the same day and confessed to Ms. Brown's murder. On March 24, 2006, authorities filed a criminal complaint against Marlin in the Contra Costa Superior Court, charging him with the murder of Ms. Brown under Penal Code § 187 and burglary under Penal Code §§ 459 and 460(a), Case No. 220484-0. For each count, the People also alleged the following charge enhancement under Penal Code § 12022(b)(1):

> . . . in the commission and attempted commission of the above offense the Defendant, MARLIN SYNIGAL, personally used a Dumbbell Bar, a deadly and dangerous weapon.

///

The criminal court held a preliminary examination and held Marlin to answer for Ms. Brown's murder. Thereafter, the court set a date for Marlin to enter a plea. On the day set for his plea, however, the court ordered Marlin to undergo a psychiatric examination to determine his competency to stand trial. Thereafter, on June 21, 2006, the court ruled Marlin was incompetent to stand trial. The Court ordered Marlin held at the California Youth Authority, where Marlin was to receive further mental evaluation and training so that he might become competent to stand trial.

To date, Marlin remains in the Youth Authority awaiting transfer to a state psychiatric hospital. Marlin never entered a plea to the criminal charges.

### iii) Danita King Files a Wrongful Death Action against Marlin, Malcolm and Angela Synigal

On August 29, 2007, Ms. King filed a wrongful death complaint against the Synigals and Marlin in the Contra Costa Superior Court, Case No. C07-01910. The form complaint, which is terse, contains the following allegations:

**FIRST CAUSE OF ACTION—General Negligence**

Defendants Malcolm Synigal and Angela M. Synigal negligently supervised their son, Marlin Synigal and as a direct and proximate cause of their negligent supervision, Plaintiff's daughter was assaulted, battered and killed by Defendant's son, all to Plaintiff's damage.

Defendant Marlin Synigal was negligent in the manner in which he acosted [sic] Plaintiff's daughter, Nadawn Brown, and as a direct an [sic] proximate result of said negligence, Nadawn Brown was killed and Plaintiff sustained damages.

**SECOND CAUSE OF ACTION—Intentional Tort**

Defendant Marlin King [sic] intentionally assaulted the person of Nadawn Brown, directly and proximately causing her death all to Plaintiff's damage.

**EXEMPLARY DAMAGES ATTACHMENT**

Defendant entered Plaintiff's home unlawfully, waited in hiding for the arrival of Nadawn Brown, assaulted, battered and killed her when she entered the home.

///

         **iv)    The Synigals Tendered Their Defense and Metropolitan Initiated This Declaratory Relief Action**

The Synigals and Marlin tendered their defense of the Underlying Action to Metropolitan. Metropolitan agreed to defend while reserving its rights, including the right to initiate this declaratory relief action to determine that the Policy provided no coverage based on Marlin's intentional killing of Ms. Brown. On October 23, 2007, Metropolitan filed this action.

    **B)    The Synigals Assertions of Fact**

The Synigals generally agree with Metropolitan's summary of the facts, except to the extent Metropolitan contends Marlin acted intentionally. Additional factual information necessary to resolving these coverage issues, including information about the circumstances of Ms. Brown's death and Marlin's mental condition, will be developed in the course of litigating the underlying civil and criminal actions.

## 3.    LEGAL ISSUES

    **A)    Metropolitan's Complaint**

Metropolitan's complaint contains two claims for relief. The first claim seeks a declaration that the claims against the Synigals based on Marlin killing Ms. Brown are not within the scope of coverage afforded under the Policy. The second claim seeks a declaration that, in the alternative, the Policy's intentional or criminal acts exclusion precludes coverage for the Synigals for claims that Marlin killed Ms. Brown. Metropolitan's claims for relief raise three issues: 1) whether Marlin's alleged killing of Ms. Brown was an "occurrence"—i.e. accident—under the Policy; 2) whether the Policy's intentional or criminal acts exclusion otherwise precludes coverage for such alleged acts; and 3) whether Marlin's alleged actions also preclude coverage for the Synigals, against whom Ms. King alleges only negligent conduct.

        **i)    Whether There is an "Occurrence"**

            **a)    Metropolitan Asserts There Could Be No "Occurrence"**

Metropolitan asserts that there was no "occurrence" based on the allegations of the underlying criminal and civil actions and the indisputable facts and circumstances surrounding Ms. Brown's death. The criminal complaint alleges that Marlin murdered Ms. Brown. Ms.

King's complaint pleads in the alternative: 1) Marlin lay in wait in Ms. Brown's home, and attacked and killed her upon her arrival; and 2) Marlin negligently accosted Ms. Brown, resulting in her death.

Moreover, Metropolitan asserts that the following facts are undisputed: 1) Marlin killed Ms. Brown; 2) Marlin confessed to killing Ms. Brown; and 3) Marlin did not act in self-defense.

Based on the foregoing, Metropolitan asserts that there was no "occurrence," regardless of any legal insanity or diminished mental capacity Marlin suffered at the time of Ms. Brown's death. Even if Marlin "negligently accosted" Ms. Brown, Marlin still "accosted," or acted aggressively toward, Ms. Brown in a manner which resulted in her death. Under California law, Metropolitan asserts, such circumstances do not constitute an "accident" within the meaning of a liability policy.

Under California insurance law, an "occurrence" or "accident" refers to "the happening of the event itself and not the consequences of that act." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1148 (9th Cir. 1998). An accident is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage. *Merced Mutual*, 213 Cal. App. 3d at 50. "Accident" refers to the nature of the insured's conduct, not his state of mind. *Quan*, 67 Cal. App. 4th at 596.

Thus, when the injury suffered is the result of an unbroken chain of intentional conduct, such injury was not caused by an "occurrence" merely because the insured did not intend to produce any harm or injury thereby. *State Farm Mut. Auto. Ins. Co. v. Davis*, 7 F.3d 180, 183 (9th Cir. 1993); *Merced Mutual*, 213 Cal.App.3d at 50.

Moreover, the way that a complaint labels an insured's acts is irrelevant to the determination of whether those acts are an "accident." *Chamberlain*, 931 F.2d at 1365. As a result, the fact that a victim of the insured's deliberate and purposeful act may seek to recover on theories of "negligence" does not change the nature of the conduct itself. *Id.*

Following these principles, a Northern California District Court found a psychotic knife attack was *not* an "occurrence" under a homeowners policy similar to the Policy in *Allstate Ins. Co. v. Griffin*, 2006 WL 3334936 (N.D. Cal.). The Court noted, "California law holds that an

occurrence requires an accident and excludes conduct that is intentional, even if the intent to harm is absent." *Id.* at *6.

Accordingly, Metropolitan asserts there was no accident, even under Ms. Brown negligent accosting theory. Marlin deliberately acted in a way that resulted in Ms. Brown's death. Even if he intended no harm, or lacked the capacity to form intent for criminal purposes, there was no accident.

### b) The Synigals Assert There Could Be an "Occurrence"

As explained in the Synigals' papers supporting their motion to dismiss or stay this declaratory relief action, the Synigals assert that this Court cannot determine as a matter of law that Marlin's conduct was intentional, or whether there was an "occurrence," based only on the allegations of the underlying criminal and civil complaints. It requires factual information that will be discovered in the underlying civil suit in the course of adjudicating Danita King's claims that Marlin either intentionally killed her daughter or "negligently accosted" her, causing her death. There is no *evidence* at this point of what Marlin actually did, or of the circumstances leading up to the alleged assault.

Second, even *if* Marlin attacked Ms. King in the manner Metropolitan supposes, it would not necessarily mean his (alleged) conduct was intentional for coverage purposes. That is because under California law, an insured's conduct will not be deemed an "intentional act" if the insured is "*either* volitionally impaired so that he cannot control his actions even though he knows what he is doing, or cognitively impaired so that he cannot understand the nature of his acts or that they will cause injury." *Congregation of Rodef Sholom of Marin v. American Motorists Ins. Co.*, 91 Cal. App. 3d 690, 697-698 (1979), disapproved on other grounds by *JC Penney Cas. Ins. Co. v. M.K.*, 52 Cal. 3d 1009, 1020 (1991).

The relevance of the insured's mental state was confirmed in *Griffin v. Allstate Ins. Co.*, 2006 WL 3334936 (N.D. Cal.), in which the insured attacked and stabbed a diner while she was sitting in a restaurant. The insured was convicted of violating Penal Code section 245(a) [assault with a deadly weapon], but was found to have been insane at the time of the attack. The court held that it could not determine whether the insured's attack was intentional or was an

"occurrence" under the policy without evidence of the insured's mental state. *Griffin v. Allstate Ins. Co.*, 2005 WL 2122053 at p. 3. Until such evidence was adduced, the Court was unable to determine how the policy applied.

    ii)  **Whether the Policy's Intentional or Criminal Acts Exclusion Precludes Coverage**

      a)  **Metropolitan Asserts the Exclusion Does Preclude Coverage**

Metropolitan further asserts that the same undisputed facts trigger the intentional and criminal acts exclusion. This is because the exclusion applies regardless of Marlin's lack of mental capacity to govern his conduct. The overwhelming majority of courts that have interpreted similar exclusions, as surveyed in *Allstate Ins. Co v. Davis*, 430 F.Supp.2d 1112 (D. Haw. 2006), concluded that the insured's lack of mental capacity was irrelevant to the exclusion's effect of precluding coverage for non-accidental conduct that a mentally impaired person committed.

      b)  **The Synigals Assert the Exclusion Does Not Preclude Coverage**

The Synigals submit this exclusion cannot be applied as a matter of law until the underlying criminal action is resolved.

First, under California law, the insurer bears the burden of proving a policy exclusion applies. *Prichard v. Liberty Mut, Ins. Co.*, 84 Cal. App. 4th 890, 910 (2000). Until Marlin's intentions and motives are actually adjudicated as "intentional and criminal," the exclusion cannot be deemed applicable.

Second, even if it were proved that Marlin killed Ms. King, he might never be convicted of a crime. Under California law a crime has not been committed when the person is found not guilty by reason of insanity. *People v. Drew*, 22 Cal. 3d 333, 344 (1978) [a judgment after finding of insanity is treated as an acquittal]; *Griffin v. Allstate Ins. Co.*, 2006 WL 3334936 (N.D. Cal.) [insured who stabbed victim multiple times deemed "insane" at criminal trial, so criminal act exclusion did not apply].

Third, we note the criminal acts exclusion considered in *Griffin* included the same language contained in the Metropolitan policy, yet the *Griffin* court held the insane insured's

///

conduct was not a "criminal act" under California law, and so the exclusion would not apply. *Griffin v. Allstate Ins. Co.*, 2006 WL 3334936.

   iii)  **Whether One Insured's Intentional Acts Preclude Coverage for All Insureds**

     a)  **Metropolitan Asserts That the Policy Contains a Joint Obligation Clause That Precludes Coverage for All Insureds for Liability Arising out of One Insured's Intentional Conduct**

Metropolitan asserts that the Policy provides that acts by one insured are binding on the other insureds. Such joint obligations clauses in homeowners' policies serve to preclude coverage for all insureds for claims arising out of one insured's intentional conduct. *Farmer v. Allstate Ins. Co.*, 311 F. Supp. 2d 884 (C.D. Cal. 2004) (joint obligation clause precluded coverage for wife for negligent supervision of husband who molested child); *Castro v. Allstate Ins. Co.*, 855 F. Supp. 1152 (S.D. Cal. 1994) (joint obligations clause precluded coverage for mother for negligent supervision of minor son who murdered rival gang member); *Boon v. Allstate Ins. Co.*, 2003 WL 21664170 (C.D. Cal.) (joint obligations clause precluded coverage for wounded police officer's negligence claims against wife who failed to inform the officer that the husband was mentally unstable and had threatened to shoot the police). Accordingly, Metropolitan asserts that Marlin's non-accidental conduct defeats coverage for Ms. King's claims of negligent supervision against the Synigals.

     b)  **The Synigals Deny That the Joint Obligations Clause Negates Coverage as to Them**

Since coverage for Marlin cannot be determined without evidence adduced in the criminal and civil suits, the negligence claims present a relevant potential for coverage under the policy. If the policy ultimately were deemed to cover Marlin's conduct, then the joint obligations language would be moot, and coverage would exist for his parents, as well.

Moreover, the "joint obligations" provision has been applied to deny coverage to innocent co-insureds based on the insured's prior criminal conviction. *See*, *Castro v. Allstate Ins. Co.*, 855 F. Supp. 1152 (S.D. Cal. 1994) [prior conviction for first degree murder]; *Farmer v. Allstate Ins.*

*Co.*, 311 F. Supp. 884 (C.D. Cal. 2004) [prior conviction for sexual molestation]; and *Boon v. Allstate Ins. Co.*, 2003 WL 21664170 (C.D. Cal.) [prior conviction for felony assault on a police officer].

### B) The Synigals' Motion to Dismiss or Stay

On December 3, 2007, in response to Metropolitan's complaint, the Synigals filed a motion to dismiss or stay this action on the grounds that a declaration that this action would require this Court to determine the same factual issues that already are pending in both the state criminal and civil actions: *e.g.*, whether Marlin intentionally killed Ms. Brown, whether he was capable of intentionally killing her given his diminished mental capacity, whether Ms. Brown's death was inflicted in self-defense, whether her death was an unfortunate result of the insured's negligence, or whether it simply was a tragic accident.  Accordingly, the Synigals assert that proceeding with this action would generate duplicative litigation and severely prejudice the insured's ability to defend both the criminal and civil suits.

In support of their motion, the Synigals cite cases supporting a stay or dismissal of a declaratory relief action where there is a significant overlap of parties and issues with another pending case. *See, e.g.*, *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491, 494 (1942); *Wilton v. Seven Falls Co.*, 515 US 277, 288 (1995).

Metropolitan has opposed the Synigals' motion on the basis of its assertion that the facts supporting is complaint are undisputed.  Metropolitan asserts that there is no dispute that Marlin killed Ms. Brown, Marlin's mental state is irrelevant to coverage, and there is no indication that Marlin acted in self-defense.  Thus, a dismissal or stay is not appropriate because this action does not raise any factual issues that are disputed in the underlying actions.

Moreover, Metropolitan asserts there is no risk of prejudice to Marlin in the underlying actions because he is not a party to this action.  Accordingly, collateral estoppel would not attach.

The Synigals' motion is set to be heard on January 24, 2008.

///

///

///

**4. <u>MOTIONS</u>**

**A) The Synigals' Motion to Dismiss or Stay**

The Synigals' Motion to Dismiss or Stay is discussed above in Section 3.B.

**B) Summary Judgment**

Metropolitan anticipates filing a motion for summary judgment or adjudication to determine whether coverage exists.

**5. <u>AMENDMENT OF PLEADINGS</u>**

Metropolitan does not anticipate the need to amend its pleadings. It proposes that the deadline to amend pleadings be set to thirty days after the entry of the case management order, subject to the *caveat* regarding the illness of Ms. King's counsel, Clarence Livingston, in Section 20 below.

**6. <u>EVIDENCE PRESERVATION</u>**

The parties do not anticipate any issues regarding evidence preservation.

**7. <u>DISCLOSURES</u>**

The Rule 26 disclosure deadline is January 23, 2008. Metropolitan does not anticipate any issues with disclosure, except as described in Section 20 below regarding Mr. Livingston's illness.

The Synigals intend to serve their initial disclosure as required, but note that it is somewhat premature given the limited information that is currently available.

**8. <u>DISCOVERY</u>**

**A) Discovery Taken to Date**

The parties have served no discovery to date.

**B) Limitations on Discovery/Modification of Discovery Rules**

Neither Metropolitan nor the Synigals anticipate any need to limit or modify the discovery rules. The Synigals note, however, that the ability to obtain discovery and/or testimony from Marlin Synigal likely will be limited or precluded by the Fifth Amendment of the U.S. Constitution.

///

///

**C) Discovery Plan**

1. Discovery will be needed on the following subjects:

    • Metropolitan asserts that discovery will be needed on the following topics: 1) the terms of the Policy, if any defendant does not already have a complete copy of the policy; and 2) Marlin's conduct leading to Ms. Brown's death.

    • The Synigals assert that discovery will be needed on the foregoing issues and: 1) Marlin's mental state at the time Ms. Brown died; and 2) whether the factual circumstances surrounding Ms. Brown's death provide a defense to the civil and criminal claims asserted against Marlin, including but not limited to whether Marlin acted in self defense.

2. Neither Metropolitan nor the Synigals anticipate issues with electronic discovery.

3. Metropolitan does not anticipate issues with claims of privilege or protection of trial preparation materials. The Synigals anticipate potential privilege issues arising from the criminal claims asserted against Marlin. It is highly unlikely, for example, that Marlin's counsel in the criminal action would permit him to testify in this action or in the underlying civil suit while the criminal charges are pending.

4. Metropolitan believes that discovery should be complete within 180 days from the entry of the case management order. The Synigals do not believe discovery should be commenced in this action because it will overlap with discovery to be conducted in the underlying civil suit. If discovery in this case were to proceed, however, it would meet several impediments: 1) Marlin's mental incompetence precludes him from participating in discovery; 2) the criminal charges against Marlin preclude him from participating in discovery; 3) Marlin's current custodial situation will likely

```
 1              hamper the parties' ability to conduct the necessary discovery on his mental
 2              condition, including expert evaluations; and 4) the medical condition and
 3              unavailability of co-defendant Danita King's counsel precludes her from
 4              participating in this litigation for some unknown period of time.  The
 5              Synigals therefore do not agree that discovery could be completed within
 6              180 days from the entry of the case management order.
 7        5.    Metropolitan does not anticipate the need for expert witnesses.  The
 8              Synigals anticipate the need for expert testimony on the issue of Marlin
 9              Synigal's mental condition and competence.
```

**9.    CLASS ACTIONS**

This action is not a class action.

**10.   RELATED CASES**

Metropolitan asserts there are no related cases within the meaning of Civil L.R. 3-12(a).

**11.   RELIEF**

Metropolitan seeks equitable relief only. Metropolitan's first claim for relief seeks a declaration that the Policy's grant of coverage does not provide coverage for the Synigals for the claims alleged in the underlying civil action. Metropolitan's second claim for relief seeks a declaration that the Policy's intentional or criminal acts exclusion precludes coverage of the Synigals for the claims alleged in the underlying civil action.

**12.   SETTLEMENT AND ADR**

Metropolitan and the Synigals submitted a stipulation and proposed order for early neutral evaluation pursuant to ADR L.R. 3-5.

With regard to settlement prospects, Metropolitan and the Synigals agree that this case presents an "all or nothing" proposition. Ultimately, the outcome of the case will turn on policy interpretation. The Court's policy interpretation likely will result in one of two outcomes: 1) the Synigals are covered, or 2) they are not. Thus, Metropolitan believes this case is best resolved by dispositive motion.

///

**13. CONSENT TO MAGISTRATE FOR ALL PURPOSES**

On December 12, 2007, Metropolitan filed a Declination to Proceed before a United States Magistrate Judge.

**14. OTHER REFERENCES**

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15. NARROWING OF ISSUES**

Metropolitan believes the issues of this case likely will be disposed of by summary judgment or adjudication. The Synigals assert, however, that the existence of factual issues, particularly those pertaining to Marlin's mental incompetence and condition, might preclude summary disposition.

**16. EXPEDITED SCHEDULE**

The normal FRCP procedures are appropriate for this case.

**17. SCHEDULING**

Metropolitan proposes the following schedule, subject to adjustment arising out of Mr. Livingston's illness, as discussed in Section 20. The time limits are based on the date of the entry of the scheduling order:

| | |
|---|---|
| **Discovery Cut-off** | 180 days |
| **Last Day to Hear Dispositive Motions** | 240 days |
| **Trial** | 290 days |
| **Final Pre-Trial Conference** | 10 days before trial |

The Synigals do not agree that the matter can be resolved in this timeframe. As mentioned, the Synigals do not believe this matter can proceed at this time, and certainly do not believe discovery could be completed within 180 days for the reasons explained in paragraph 8(C)(4), above. Because of the various factors affecting the litigation of this action, none of which is in the parties' control, any deadlines that are set should be set with the understanding that they can be changed if circumstances warrant.

///

**18. TRIAL**

The trial would be a bench trial. The expected duration is four days.

**19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Metropolitan has filed a Certification of Interested Parties pursuant to Civil Local Rule 3-16. MetLife Auto & Home and Metropolitan Life Insurance Company are affiliated with Metropolitan, but neither appear to have a financial or non-financial interest in the outcome of this action.

The Synigals assert that while Marlin Synigal is not a party to this declaratory relief action, he clearly has an interest in the factual and legal determinations reached in this action.

**20. OTHER PERTINENT MATTERS**

During the meet and confer process Metropolitan and the Synigals learned that Ms. King's counsel, Clarence Livingston, had been hospitalized with what appeared to be a stroke. Mr. Livingston is a sole practitioner, and, accordingly, Ms. King had no attorney to represent her in the meet and confer process. Thus, Metropolitan and the Synigals are filing this Joint Case Management Conference Statement without Ms. King.

Given the foregoing, Ms. King's representation may be hampered while Mr. Livingston recovers and/or Ms. King finds new counsel. As such, the proposed schedule may need to be adjusted to accommodate Ms. King.

Dated: January 17, 2008          CHARLSTON, REVICH & CHAMBERLIN LLP
                                 JEFFREY A. CHARLSTON
                                 STEPHEN P. SOSKIN
                                 THOMAS S. FLYNN


                                 By:_____/S/_____
                                    Thomas S. Flynn
                                    Attorneys for Plaintiff Metropolitan Direct
                                    Property and Casualty Insurance Company

Dated: January 17, 2008          LOMBARDI, LOPER & CONANT, LLP
                                 LORI A. SEBRANSKY


                                 By:_____/S/_____
                                    Lori A. Sebransky
                                    Attorneys for Defendants Malcolm M.
                                    Synigal, Sr. and Angela M. Synigal

|   |   |
|---|---|
| 1 | PROOF OF SERVICE |
| 2 | 1013(a) (3) C.C.P. |

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1925 Century Park East, Suite 1250, Los Angeles, California 90067-2746.

      On January 17, 2008, I served the foregoing document described as **JOINT CASE MANAGEMENT CONFERENCE STATEMENT OF PLAINTIFF METROPOLITAN AND DEFENDANTS MALCOLM AND ANGELA SYNIGAL; [PROPOSED] ORDER** on the interested parties in this action as follows:

      Clarence Livingston, Jr.
      Law Offices of Clarence Livingston, Jr.
      One Kaiser Plaza, Suite 2300
      Oakland, CA 94612

      Attorneys for Defendant DANITA KING

      The documents were served by the following means:

**X**    **(BY MAIL)** As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on the same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**X**    **FEDERAL:**  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

      Executed on January 17, 2008 at Los Angeles, California.

                                /S/
                              Mary Griffin